MARY SWEENEY, Respondent, *v.* THE INDEPENDENT ORDER OF FORESTERS, Appellant.

Third Department, March 3, 1920.

**Insurance — life insurance — action on benefit certificate in Independent Order of Foresters — false answers by insured to questions in application — facts known to representative of insurer who filled out application — failure of plaintiff to exhaust remedy within order — nonsuit properly denied.**

In an action to recover on a benefit certificate issued to the plaintiff's husband by the defendant wherein the defenses interposed were that the insured gave false answers to questions asked of him concerning his occupation and which he was required to answer truthfully in his application for insurance, and that the plaintiff did not exhaust or attempt to exhaust her remedy within defendant's order, it appeared that in the application for the insurance the defendant's agent, a deputy supreme chief ranger, inserted his name as the proposer of the insured, that said application was approved at the home office, and that said deputy supreme chief ranger knew all the facts concerning the occupation of the insured.

*Held,* that under the constitution and laws of the defendant, the said deputy supreme ranger was a representative of the supreme chief ranger, the head of the defendant's order, and that in making out the application for the insured he was acting as the representative of the defendant, with the power of supreme chief ranger, and not as the agent or representative of the insured, and that having determined that the insured was person-

ally engaged in the occupation stated in the application, such determination is binding upon the defendant and it cannot now repudiate his acts;

That the defense that the plaintiff had not exhausted her remedy within the order was without merit, as no determination was made and she was informed that the defendant would not pay her claim, and under these circumstances she was entitled to appeal to the courts for redress.

The defendant's motion for nonsuit was properly denied, as the evidence introduced by the plaintiff and the facts admitted by the defendant, established a *prima facie* case on the part of the plaintiff.

APPEAL by the defendant, The Independent Order of Foresters, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Washington on the 29th day of July, 1919, upon the decision of the court rendered after a trial at the Washington Trial Term, a jury having been discharged.

*Mork & Baum* [*Joseph M. Baum* and *Charles Fredericks* of counsel], for the appellant.

*Chambers & Finn* [*Daniel J. Finn* of counsel], for the respondent.

KILEY, J.:

This action was brought by the plaintiff upon a benefit certificate issued to her husband by the defendant on March 15, 1916. The amount which defendant bound itself to pay to plaintiff upon the death of the insured, which occurred February 9, 1918, was $1,000. Plaintiff had judgment in the court below and defendant appeals to this court from said judgment. The defendant is a fraternal organization, incorporated and existing under the laws of the Dominion of Canada, and the Kingdom of Great Britain and Ireland. The case was tried before a jury, but both parties, at the close of the evidence, asked for a direction of a verdict and the trial judge examined the evidence and made findings and granted judgment as aforesaid. Upon the trial all of the defenses set up by the defendant in its answer were eliminated, save two, viz., that the insured gave false answers to the questions asked of him, and which he was required to answer truthfully in his application for insurance and upon his medical examination, and that the plaintiff did

not exhaust or attempt to exhaust her remedy within defendant's order as in and by its constitution and laws provided. Upon this appeal the additional question is submitted that there was an erroneous admission of evidence, questions for which were duly objected to and exception duly taken, and that the court should have granted defendant's motion for nonsuit. The position of the respondent is, that the false representation or misstatement, if it did not amount to a false representation, was waived by appellant's duly accredited representative and that it is estopped from raising that question — and also said representative made the statements so complained of himself and decided they were acceptable to his principal, and not misrepresentation. Here we reach the real difficulty in this controversy — what was the status of Benjamin B. Bibby in and with the appellant? What power and authority had those seeking insurance with the appellant, without notice, except such as indicated by his position, his title and his acts, the right to assume he had; in other words, was he clothed, apparently, with full power and authority to represent his principal in procuring contracts from the insured and to bind said insured to the covenants therein made, to his principal's advantage; and yet limited by secret or *quasi* secret limitations in favor of the principal, so that said principal could, at any time, renounce such apparent authority, cancel the contract so made and thus avoid liability? A reference to constitution and laws of appellant will be some aid in determining what Bibby might have been and we may be able to conclude what he actually was. Section 70 provides "(1) Deputy Supreme Chief Rangers shall be duly commissioned by the Supreme Chief Ranger, and they shall *ex-officio* be entitled to receive the High Court and the Supreme Court degrees as Honorary Members thereof.

"(2) A Deputy Supreme Chief Ranger shall —

"(a) Be a representative of the Supreme Chief Ranger in the territory assigned to him, with such powers only as are vested in a Deputy of the Supreme Chief Ranger by the constitution and laws *and as may be further vested in such Deputy by special written authority of the Supreme Chief Ranger.*

"(b) *Act under the directions of the Supreme Chief Ranger.*

"(c) Have power to organize and institute subordinate

courts, companion courts and juvenile courts anywhere in a territory not prescribed by the executive council."

The balance of the section has to do with.(D) making proper returns. (E) Compensation and how collected by deputy supreme chief ranger. (3) Instituting new courts and appointing a court deputy. (4) and (5) Termination of office. Subdivisions (3), (4) and (5) do not involve the deputy supreme chief ranger, except where the provisions for termination of office applies. Section 70 above quoted is indexed in appellant's constitution and laws as " Deputy Supreme Chief Ranger's duties and powers of." Section 19 of the constitution and laws of the appellant confers upon the supreme chief ranger such powers and prescribes such duties as he shall exercise and perform. " Subdivision (6) to grant dispensations to initiate applicants for membership at any time at less than, or without the regular fees; to grant such dispensations as may be required and are authorized by the constitution and laws, *and to grant such other dispensations as he may deem to be in the interest of the Order.*" " Dispensation ? " This word has a well-defined meaning, which is clearly applicable here. Black's Law Dictionary says it means " an exemption from some laws; a permission to do something forbidden; an allowance to omit something commanded." Webster's Unabridged Dictionary, " the granting of a license, or the license itself, to do what is forbidden; that is, the dispensing with a law or canon, or the exemption of a particular person from the obligation to comply with its injunctions." Words and Phrases (Vol. 3, p. 2113), quoting *Viele* v. *Germania Ins. Co.* (26 Iowa, 9), says: " The waiver or dispensation is not in the nature of a contract, which requires the support of a consideration, but rather of an estoppel, whereby the underwriter is precluded from denying the validity of the contract on account of acts or admissions, either recognizing it as of binding force after the forfeiture or holding out to the assured that the performance of the condition is dispensed with." An examination of section 19 of appellant's constitution and laws shows that the supreme chief ranger is clothed with power second to none in the order. Again returning to section 70 above quoted, which defines the powers and duties of the deputy supreme chief ranger, we find he is a representative of

the supreme chief ranger in the territory assigned to him. True, he acts as such representative under the constitution and laws of the order; but he may be further vested with additional powers " *by special written authority of the Supreme Chief Ranger.*" (Subd. A under section 70.) " Representation is the act of one person representing or standing in the place of another; and he who so represents or stands in the place of another is termed his representative." (Black's Law Dictionary.) The application for this insurance is dated February 16, 1916, and was received and stamped at the home office February 22, 1916. In that application Bibby inserted his name as the voucher or proposer of Sweeney and adds his title of office. It was approved at the home office. He was then acting, so far as any thing in the record to the contrary, as the representative, with power, of supreme chief ranger. He had the power to so act under the constitution and laws of appellant. (Sections 19 and 70.) The deputy supreme chief ranger is dead, and his acts are entitled to the presumption that they were honestly and legally performed, when he determined that Sweeney was not personally engaged in the sale of liquor, but what he did in the way of labor was steam fitting. Should misrepresentation or fraud be found here, it must be found on the part of the representative of the appellant order. He knew all the facts; that is beyond contradiction; he knew how he should and could apply the rules of his principal to the facts as he knew them; there can be no question here of mistake on the part of Bibby and fraud on the part of Sweeney. Sweeney did not know except as Bibby told him. Sweeney, it is urged, had a copy of the constitution and laws; the receipt on the application signed by Sweeney is to that effect apparently; but the evidence is that nothing was left with the applicant. In support of the attitude here maintained, that Bibby acted honestly and within his powers and privileges, it is observed that the first negotiation with Sweeney was in December, 1915, as shown by the erased date on the application blank. It is not a violent or improbable assumption that Bibby communicated the facts to the supreme chief ranger, and received the dispensation, intended and provided for, in section 19, subdivision 6, of the constitution and laws. This, however, does not fully answer the argument of the appellant that it should not

be compelled to pay this plaintiff; because it is urged that in every step taken by the applicant for insurance and in every act thereafter, until the end of time for him, he bound himself to take as his representative and agent the man selected by the defendant appellant; that further, he bound himself in times of hostility and friendship alike to seek no other assistance, to consult no other tribunal, to disregard the aid of others and submit his rights to the decisions and mandates of this order. The constitution and laws of the order are contained in a book four by six inches, 435 pages and printed in small type. This applicant, appreciating that human nature is prone to err, oftener, innocently, than with fraudulent or wrongful intent, drew and formulated its laws accordingly. Hence innocent mistakes made in good faith with the agent you have not selected, but who was selected for you, work forfeiture of your rights in the benefit fund and all that you have paid as dues, premiums, etc. The facts appear from the constitution and laws; the trend of action, the ultimate purpose, equally appear, viz., to centralize all power and activity of either affirmative or negative nature in the order; to retain within itself the right to exercise discretion in all matters affecting the order before and after the assured has become a member, and to do so arbitrarily without regard to extraneous laws or rules. (See constitution and laws.) The assured by these laws woven in and out throughout the whole mass, agrees to be bound, not only by the scrip but by section numbers (See form of benefit certificate), and last but not least, he agrees that the law of the State in which he lives shall be abrogated and after his death his representatives shall sit idly by and let evidence, otherwise incompetent, be produced against them. It would unduly extend this opinion to quote all of the provisions in the constitution and laws here involved that limit the rights and acts of the assured, and subordinate them to the will of the order's representative, or the mandate of the order itself. Forfeiture is always the penalty. When the advantage of the order is enhanced by the acts of the deputy supreme chief ranger, then he is the representative of the order, and when to its disadvantage, then he is the agent of the applicant or assured. We think *Sternaman* v. *Metropolitan Life Ins. Co.* (170 N. Y. 13) and *Reilly* v.

*Empire Life Ins. Co.* (99 App. Div. 535) are controlling on this question and that Bibby represented the appellant. *Metzger* v. *Ætna Ins. Co.* (186 App. Div. 627; revd., 227 N. Y. 411), referred to upon the argument on appeal from this court to the Court of Appeals, where the judgment of this court was reversed, does not seem to be in point. That was an action to reform an insurance policy after fire. The policy, while written for one year, was a builder's risk insurance. The insured was notified that it would have to be canceled after completion of the building in process of erection when policy was issued; that a policy on a finished building, with different rate of premium, would follow; under those circumstances it was held there was not a mutual mistake; no fraud having been charged, plaintiff could not maintain the action. No element of fraud enters into this transaction. The claimant could make no representation to the deputy supreme chief ranger affecting the matter in that regard herein relied upon as a defense; said deputy knew of his own knowledge what the facts were; he had authority under the law and constitution to determine whether they violated the rules and authority, as we have seen; and could dispense with rigid compliance if he wished. The order cannot now repudiate his acts. (*Miller* v. *Phœnix Mut. Life Ins. Co.*, 107 N. Y. 292; *O'Brien* v. *Home Benefit Society*, 117 id. 310.) These cases support the position that if there was fraud or mistake, and that view of the case should be taken, such fraud or mistake was chargeable to the appellant. The stronger position in view of the facts as presented in this case is that there was no fraud or mistake, and that the supreme deputy chief ranger exercised his discretion in accordance with the law and constitution of the order, sections 19 and 70. To determine for the good of the order, he could, would and did omit strict compliance with the regulation. He had that power, so far as anything to the contrary appears in this record. We will not assume fraud or misrepresentation in order to reverse the judgment. The next defense, viz., that plaintiff did not exhaust the remedy given her under the constitution and laws of the order. No determination was made; no notice was given that reaches any dignity, as such. She was told they would not pay; her case was prejudged; but one outcome could be expected or was possi-

ble.   In *Rockland-Rockport Lime Co.* v. *Leary* (203 N. Y. 469), at page 484 of the opinion, the Court of Appeals have said, " After such refusal there was no necessity of making a tender, *for the law does not require a vain thing to be done.*"   *Matter of Brown* v. *Order of Foresters* (176 N. Y. 132) upholds the right of the assured to appeal to the courts for redress.   (*Hann* v. *Supreme Ruling of Fraternal Mystic Circle,* 155 App. Div. 665.)   The motion for nonsuit was properly denied.   The possession of the policy issued to plaintiff's husband and in her name as beneficiary was presumptive evidence of delivery and ownership.   The payment of the assessments or premiums by the insured was admitted, death and proofs of death admitted, and non-payment to plaintiff proved or admitted, met the requirement, in the first instance, as to the plaintiff's case. There could be no mistake as to the relief sought by plaintiff; the matter of avoidance of contract because of misrepresentation or fraud was a defense; the necessary evidence to meet that defense was produced before the trial closed.   If any error crept in it was cured.   (*Kokomo Strawboard Co.* v. *Inman,* 134 N. Y. 92.)   The acts of the deputy supreme chief ranger were the acts of the order.   The evidence objected to upon the trial was competent.   (*Sternaman* v. *Metropolitan Life Ins. Co.,* 170 N. Y. 13.)

The judgment should be affirmed, with costs.

Judgment unanimously affirmed, with costs.