[Crim. No. 895.  Second Appellate District, Division Two.—October 26, 1922.]

## THE PEOPLE, Respondent, v. EDWARD MARTY, Appellant.

[1] CRIMINAL LAW—MANSLAUGHTER—AIDER AND ABETTER—EVIDENCE. In this prosecution in which the defendant and another were tried jointly on a charge of murder and were found guilty of manslaughter, although defendant did not have the gun and did not fire the shot that killed the deceased, the evidence showed that defendant aided and abetted his companion in the commission of the crime.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ralph F. Graham and Russell Graham for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

WORKS, J.—Appellant and one Guthrie were informed against jointly and were tried jointly for the murder of one Acencion Correa. Both were found guilty of manslaughter. The appeal is from the judgment of conviction and from the trial court's order denying appellant's motion for a new trial.

[1] The sole point made by appellant is that the evidence in the cause was insufficient to support the verdict. The question presented is to be resolved upon a construction of section 31 of the Penal Code, which, quoting so much of it as bears upon the point, is in this language: "All persons concerned in the commission of a crime, `. . . whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals in any crime so committed." Appellant did not directly commit the crime with the perpetration of which he and Guthrie were charged, and we are therefore called upon to determine whether he was ".concerned" in its commission and, if so concerned, whether he did "aid and abet in its commission."

In solving this problem we do not find it necessary to go beyond the facts stated in appellant's brief, taken together with fragments of the testimony quoted therein, and also with portions of the testimony pointed out in the brief by appropriate reference to the reporter's transcript. In fact, the point may be settled, practically, by the testimony of appellant alone. It appears that appellant and Guthrie proceeded one evening in an automobile driven by the latter to make a call in the town of Bell. On the way to that place they came to a point where a horse and wagon were standing diagonally across the road in such a way as to block the highway proper. There was a Mexican on the wagon and several others in its neighborhood. One of these

Mexicans was the deceased Correa. Guthrie was forced to turn to the side of the road in order to pass the horse's head. We now take up the testimony given by appellant: "I said to the Mexicans, 'What is the idea of taking all of the road?' and then they started to speak in high tones, and we got fifteen or twenty feet from the wagon, when there was a shot fired. I could see the Mexican on the wagon . . . fire the shot. . . . I turned my head toward the filling station [which was a short distance farther along the road], and then in about five or six seconds later another shot was fired. It sang past our heads. . . . I says to Mr. Guthrie, 'I wonder what their idea is?' And Mr. Guthrie says, 'I don't know.' He says, 'We will stop at the filling station and get a gun.' " They did then go to the filling station and appellant opened the conversation with the proprietor of the place. Appellant himself testified: "I said, 'Some Mexicans down the line shot at us without a reason, I don't know whether it is a holdup gang or not, but [*sic*] through a misunderstanding.' " Guthrie then asked the filling station keeper to lend him a revolver, but the keeper handed him a shotgun instead. Guthrie and appellant at once turned back toward the place at which they had encountered the horse and wagon and passed 250 feet beyond. They then got out of their car and proceeded on foot to where the Mexicans were, about the wagon, Guthrie having the shotgun in his hands. We again take up the testimony of appellant: "We both got out of the car and went back to where these here Mexicans were, and I said to them, 'Now, we are not hunting trouble, understand,' assuring them of our friendship, and so I says, 'What is the idea of firing at us?' They pointed out along the road and said, 'No business, no business.' I said, 'Haven't American citizens a right to drive on the thoroughfare without being fired on?' " Thereupon, according to the testimony of appellant, an altercation commenced, during which one of the Mexicans asked for the names of appellant and Guthrie, which they refused, appellant saying that they came from good families in Whittier and that the Mexicans could take the license number on their car. We again take up appellant's own words: "After I told him that . . . they came toward us and started in to circling us as to take advantage of us. Mr. Guthrie told them we didn't come back to get into an

argument or anything of a battle, all we wanted was an understanding. Then they kept inclosing on us, and one of them had a log chain in his hand, and we knew they had a gun. Mr. Guthrie told them to stand back, and he asked them for their names. This younger Mexican [previously mentioned in the testimony] said, 'You son-of-a-bitch Americans,' and he ran back, and Mr. Guthrie told him several times to keep his hand off his gun, which he drew from the wagon, and as he drew this gun Mr. Guthrie shouldered the shotgun and told him to lay down his gun, and when this Mexican leveled the gun Mr. Guthrie fired.'' Several shots were then discharged in rapid succession, at least three of them coming from the shotgun in the hands of Guthrie. The fire of the latter killed Correa and wounded another of the Mexicans. It is worthy of note that at the time of these unfortunate occurrences appellant was twenty-one years of age, while Guthrie was but nineteen.

Appellant, in support of his contention that his conduct did not bring him within the terms of section 31 of the Penal Code, cites several cases to the effect that one who merely stands by while a companion commits a crime cannot be said to have aided and abetted in its commission. Here, however, appellant did much more than merely stand by. He commenced the altercation which provoked the first fire from the Mexicans. When Guthrie said, ''We will stop at the filling station and get a gun,'' appellant made no remonstrance. On the contrary, when they reached the station, he opened the conversation with the keeper. When Guthrie asked for a revolver appellant made no remonstrance, and when the shotgun was taken by Guthrie he made none. In defiance of all the dictates of prudence he willingly, if not with avidity, returned with Guthrie to the wagon. That he was earnestly interested in this foolish attempt to come to an ''understanding'' with the Mexicans is sufficiently demonstrated by the fact that, backed by the influence of the gun in Guthrie's hands, he opened the conversation with the Mexicans and kept it up for some time. He must have been regarded by them, and justly, we think, as an aggressor. We are forced to conclude that it was only a fortuitous circumstance that the shotgun was in the hands of Guthrie. Basing our view upon the testimony of appellant alone we cannot say that the result would have

been different if the filling station keeper had placed the gun in appellant's hands instead of in those of Guthrie. We are convinced that appellant was "concerned" in the crime and "aided and abetted" Guthrie in its commission. If he did not do so we do not see what conduct on his part could have made him an aiding and abetting principal, unless he had actually held the weapon while Guthrie pulled the trigger.

Judgment and order affirmed.

Finlayson, P. J., and Craig, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 22, 1922.

All the Justices present concurred. The published minutes of the supreme court make no showing on this subject.