THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* PHOTO-COLOR CORPORATION and Others, Defendants.

Supreme Court, New York County, June 20, 1935.

*John J. Bennett, Attorney-General [Bertha Schwartz* of counsel], for the plaintiff.

*Jones, Clark & Higson [Thomas C. O'Callaghan* of counsel], for Henry A. Tupper and another.

*Edwin L. La Crosse,* for the Photocolor Pictures, Inc., and others.

*John A. Bolles,* for the Photocolor Corporation.

LAUER, J. This action was instituted on behalf of the People of the State of New York by the Attorney-General pursuant to

the authority of article 23-A of the General Business Law, commonly known and hereinafter referred to as the Martin Act. The plaintiff seeks injunctive relief against the defendants herein, prohibiting them from selling securities in the State of New York, and the appointment of a permanent receiver for the defendant corporations. From the facts educed at the trial it appears that defendants Photocolor Corporation, Photocolor Pictures, Incorporated, Frank E. Nemee and Arthur Waddingham willfully committed and/or participated in acts violative of the Martin Act and a permanent injunction should be granted as against them prohibiting any further dealings on their part in securities in this State. The defendants C. Dayton Brown, William H. Odell, Jr., Harold D. Kitchell and Godfrey H. Cheston, stock salesmen of the defendant corporations, were merely pawns acting at the direction of and upon information furnished by their superiors. As against them no permanent injunction should be issued. Their guilt, if any, was confidence in and reliance upon persons unworthy of their trust. Neither should a permanent injunction be issued against Frederick J. Lind, although the question of his freedom from liability is subject to greater doubt. Despite the fact that he was the treasurer and director of Photocolor Pictures, Incorporated, for a period of approximately four and a half months, he appears to have rested his confidence too greatly in the officers who had been connected with the defendant corporations for a long period of time.

It remains to be determined whether injunctive relief may be granted as against the defendants Tupper and Bolles. The defendant Tupper was vice-president and a director of the defendant Photocolor Corporation from December 28, 1933, until March 3, 1934, and vice-president and director of the defendant Photocolor Pictures, Incorporated, from February 3, 1934, to September 26, 1934. He was also treasurer of Photocolor Pictures, Incorporated, from June 15, 1934, to September 28, 1934, and sales manager from February 3, 1934, to the date of the commencement of this action. I think he cannot escape the inference that he possessed knowledge of the exact situation existing at least as to Photocolor Pictures, Incorporated, with which corporation he was connected as an officer from the beginning to the end of that corporation. I believe from the evidence sufficient reason exists to permanently enjoin the defendant Tupper. If, however, we assume that the defendant Tupper took no active part in the fraudulent course of conduct of the defendant corporations as practiced by their officers, directors and agents, and was ignorant of what was transpiring, then his responsibility would be similar to that of defendant Bolles.

The defendant Bolles was an officer and director of both the corporate defendants during all the time the Martin Act was violated, but the evidence does not disclose that he took any active part or knowingly participated in such violations. The violations of the Martin Act in the instant case consisted, among other things, of misrepresentations by the agents of the corporate defendants concerning the securities offered for sale, the keeping of false books of account and the issuance of false prospectuses. I come now to the consideration of the question whether a director of a corporation, who, through his supineness, dereliction of duty or indifference, but without any active participation in any fraudulent acts or practices, permits his codirectors or the corporate officers to enter into a course of conduct which violates the Martin Act, is subject to the injunctive restraint provided by that act.

Section 353 of article 23-A of the General Business Law, also known as the Martin Act, provides as follows:

" § 353. Action by attorney general. Whenever the attorney general shall believe from evidence satisfactory to him that any person, * * * corporation * * * has engaged in, is engaged or is about to engage in any of the practices or transactions heretofore referred to as and declared to be fraudulent practices, he may bring an action in the name and on behalf of the people of the state of New York against such person, * * * corporation, * * * and any other person or persons theretofore concerned in or in any way participating in or about to participate in such fraudulent practices, to enjoin such person, * * * corporation, * * * and such other person or persons from continuing such fraudulent practices or engaging therein or doing any act or acts in furtherance thereof or, if the attorney general should believe from such evidence that such person, * * * corporation, * * * actually has or is engaged in any such fraudulent practice, he may include in such action an application to enjoin permanently such person, * * * corporation, * * * and such other person or persons as may have been or may be concerned with or in any way participating in such fraudulent practice, from selling or offering for sale to the public within this state * * * any securities issued or to be issued."

It is fundamental that corporations act through their directors, and the " duty of a director is to direct." (*People ex rel. Leach* v. *Central Fish Co.*, 117 App. Div. 77, 79.) The duties of a director have been stated by the Court of Appeals in *Kavanaugh* v. *Commonwealth Trust Co.* (223 N. Y. 103, 106) as follows: " They should know of and give directions to the general affairs of the institution and its business policy, and have a general knowledge of the manner

in which the business is conducted, the character of the investments and the employment of the resources. No custom or practice can make a directorship a mere position of honor void of responsibility, or cause a name to become a substitute for care and attention. The personnel of a directorate may give confidence and attract custom; it must also afford protection."

This quotation is cited with approval in *People* v. *Marcus* (261 N. Y. 268).

While it is true that the facts in *Kavanaugh* v. *Commonwealth Trust Co.* (*supra*) and *People* v. *Marcus* (*supra*) concerned bank directors who dealt with public funds, the law therein stated in regard to the duties of a director is equally applicable to the directors of corporations which seek public funds for promotion and financing. The need of protecting the public is present in both instances.

A corporate director may not sit idly by where he knows or should know that securities of the corporation are being fraudulently offered for sale to the public, where misrepresentations are being made and false prospectuses issued, and expect that his obliviousness, supineness or dereliction of duty shall serve as his protection.

It is settled law that a director may be civilly liable for his negligence in the performance of such duties as properly pertain to his office (*Childs* v. *White*, 158 App. Div. 1; *Kavanaugh* v. *Gould*, 147 id. 281; *Bowerman* v. *Hamner*, 250 U. S. 504, 513), and these duties are "not only to existing stockholders, but as well to those from whom the corporation solicits subscriptions for its stocks or securities" (*Childs* v. *White*, *supra*, at p. 3).

A director is also civilly liable for his deliberate fraud (*Reno* v. *Bull*, 226 N. Y. 546; *Arthur* v. *Griswold*, 55 id. 400; *Brackett* v. *Griswold*, 112 id. 454; *Kountze* v. *Kennedy*, 147 id. 124) or where he represents a material fact to be true to his personal knowledge as distinguished from belief or opinion, when he does not know whether it is true or not and it is actually untrue. (*Bystrom* v. *Villard*, 175 App. Div. 433, 437, citing *Hadcock* v. *Osmer*, 153 N. Y. 604.)

The Court of Appeals of this State in construing the Martin Act, the statute here involved, in *People* v. *Federated Radio Corporation* (244 N. Y. 33), has given a clear enunciation of what is intended to be accomplished by this statute. Referring to the term "fraud," the opinion states (at p. 38): "In a broad sense the term includes all deceitful practices contrary to the plain rules of common honesty." The opinion then continues to define the purpose of the statute (at p. 38) as follows (italics mine): "*The purpose of the law*

is to prevent all kinds of fraud in connection with the sale of securities and commodities and to defeat all unsubstantial and visionary schemes in relation thereto whereby the public is fraudulently exploited. (*Hall* v. *Geiger-Jones Co.*, 242 U. S. 539.) *The words ' fraud ' and ' fraudulent practice '* in this connection *should, therefore, be given a wide meaning so as to include all acts*, although not originating in any actual evil design or contrivance to perpetrate fraud or injury upon others, *which do by their tendency to deceive or mislead the purchasing public come within the purpose of the law."* Bearing this purpose in mind, it becomes necessary to determine whether the acts of omission of the defendants Tupper and Bolles were within the purview of the statute, and if so, on what basis this determination rests.

The synonymity of the terms " fraud " and " negligence " has been considered by our Court of Appeals which has determined that they are not synonymous. The distinction is clearly expressed in the opinion of *Reno* v. *Bull* (*supra,* at p. 551): " Negligence and fraud are not synonymous terms; nor in legal effect are they equivalent terms. Fraud presupposes a wilful purpose resorted to with intent to deprive another of his legal rights. It is positive in that the purpose concurs with the act, designedly and knowingly committed. Negligence, whatever be its grade, does not include a purpose to do a wrongful act. It may be some evidence of, but is not fraud (*Gardner* v. *Heartt*, 3 Den. 232). Fraud always has its origin in a purpose but negligence is an omission of duty minus the purpose."

The courts of this State have repeatedly acquitted directors of corporations from civil liability for deceit even though they have been lax in investigation and negligent in speech. (*Reno* v. *Bull, supra; Kountze* v. *Kennedy, supra; Ultramares Corporation* v. *Touche,* 255 N. Y. 170.) The imposition of permanent restraint upon the defendants Tupper and Bolles, therefore, cannot be justified upon a theory which classifies fraud and negligence in the same category and imposes restraint for fraud where the defendants have been only negligent.

The purpose of the Martin Act, however, is both punitive and preventative. By punishing and enjoining the wrongdoers the public may be protected from victimization by stock-selling racketeers as well as by those more intent in securing funds for the corporation in which they may be interested than in those from whom they desire to secure those funds. A director who sits by indifferently and supinely, while his colleagues are fleecing the public and does nothing to discover such fleecing and prevent it, is as dangerous to the public weal as the actual wrongdoer and perhaps even more so, for it may be that the reputation for honesty

and fair dealing of this very person is that which entices the public to buy. The presence of the actual wrongdoer as well as the derelict indifferent director on directorates of corporations seeking to sell securities to the public is an evil which should not be tolerated and must be eliminated if an innocent and credulous public is to be safeguarded.

If the Attorney-General is to be limited in his enforcement of the Martin Act to cases of intentional fraud, the result of such interpretation would, in effect, place him in the position of a plaintiff in a common-law action of fraud and deceit. This could not have been the purpose of the Legislature, as the nature of the relief provided for in the Martin Act is essentially equitable and designed for the protection of the People of the State in general against fraudulent practices in the advertisement and sale of securities. The safeguarding of the public in this respect can only be accomplished by the co-operation of the courts with the Attorney-General in making effective that which may be reasonably said to be the legislative intent. This intent was said " to include all acts, although not originating in any actual evil design or contrivance to perpetrate fraud or injury upon others, which do by their tendency to deceive or mislead the purchasing public come within the purpose of the law." (*People* v. *Federated Radio Corporation, supra.*)

An examination of the pertinent section of the Martin Act as set forth above indicates that the Attorney-General may bring an action against " any other person or persons theretofore *concerned in* * * * and such other person or persons as may have been or may be *concerned with* " the fraudulent practices. The word " concern " is defined in Funk & Wagnalls' New Standard Dictionary of the English Language as " to pertain, relate or belong to; be of interest or importance to; have connection with; " and in Webster's New International Dictionary (Second Edition) as " to relate or belong to; to have reference to or connection with; to involve; to affect the interest of." A director is " concerned in " and " concerned with " the acts of his corporation and with the action of the officers thereof and of his codirectors. (*Kavanaugh* v. *Commonwealth Trust Co., supra; People* v. *Marcus, supra.*) (See, also, *Pennsylvania Railroad Co.* v. *Peddrick,* 234 Fed. 781, 786.) If the practices indulged in by a corporation are fraudulent and within the scope of the provisions of the Martin Act, the conduct of the officers and directors are within its purview as well. Necessarily they are *concerned in and with* the corporate act.

The courts of this State have recognized that something less than legal fraud will suffice to invoke the injunctive powers of the

Martin Act. A reading of the opinion in the case of *People* v. *Federated Radio Corporation* (quoted *supra*) makes this evident. We quote further (from p. 41): " Promoters are under a duty to make reasonable investigation before issuing a prospectus and to the extent that they fail in the performance of their duty, lack of scienter will not relieve them from liability in an action brought under the Martin Act."

The defendants Tupper and Bolles are in a similar position to promoters as set forth in the *Federated Radio* case, just quoted, even assuming that they did not participate in the fraud. These defendants were " concerned in " and " concerned with " the affairs of the defendant corporations and their neglect and failure to intervene and take steps to prevent the course of fraudulent practices of their codirectors and the officers and agents of the corporations, as well as their failure to participate actively in the affairs of these defendant corporations, bring them within the purview of the provisions of the Martin Act and they should be permanently enjoined from dealing in securities in this State. Submit findings on or before June 25, 1935.