[Crim. No. 3993.   Second Dist., Div. Three.   Sept. 18, 1946.]

THE PEOPLE, Respondent, v. HOWARD LE GRANT et al., Appellants.

Joseph L. Fainer, Betty B. Gillette and Maurice A. Gleason for Appellants.

Robert W. Kenny, Attorney General, and L. G. Campbell, Deputy Attorney General, for Respondent.

KINCAID, J. pro tem.—By indictment, Raymond Poche and the appealing defendants, Howard Le Grant and Vincent Poche, Jr., were accused of the crime of murder, a felony.

A trial by jury was waived by each defendant, and, following the court trial, Raymond Poche was exonerated and the appealing defendants were found guilty of the crime of manslaughter, a felony, as a lesser offense than that charged in the indictment of murder but one necessarily included therein. From such judgment and from the order of the court denying them a motion for a new trial, such defendants jointly appeal.

While the evidence is highly conflicting in many particulars, viewed most favorably in support of the judgment, the record discloses the following series of events to have taken place.

At about 12:15 a. m., on September 6th, 1945, the decedent, Elliott Casselman, a United States Army soldier in uniform, had left a bar, in company with two lady friends and was driving his automobile with them as companions in an easterly direction on Hollywood Boulevard in Los Angeles. Another automobile, operated by the defendant Howard Le Grant, with the defendant Vincent Poche, Jr., accompanying him in the front seat, and with Raymond Poche and a young lady occupying the rear seat, was likewise proceeding at the same place and time and in the same direction. As the automobiles were passing in traffic remarks were exchanged between the occupants of the two cars, whereby someone in the Le Grant automobile said, ''do you want to make something of it?'' to which Casselman replied, ''sure.'' Thereupon, someone from Le Grant's car said, ''pull over to the curb,'' whereupon both automobiles were parked adjacent to the curb with Le Grant's car some 35 feet ahead of the point where Casselman had parked. The three male occupants of Le Grant's car thereupon got out and stood together at a point on the sidewalk about the rear of that automobile, while at the same time Casselman left his car and walked toward them with his arms swinging

naturally at his sides. No word was spoken by any of the four men at that time, but as Casselman got within range of the three standing men, the defendant, Vincent Poche, Jr., struck Casselman about the chin, knocking him backward into a plate glass show window of a store building with such force that the window was cracked. Casselman then rebounded or lunged forward and was struck again by Vincent Poche, Jr., whereupon Casselman again was forced back into and through the window, striking the rear portion of his head and upper body on the corner of the glass and of the base of the window, shattering the glass on both sides of such corner. He then slumped to the ground, unconscious, and died either then or very shortly thereafter. Neither Raymond Poche nor Le Grant advanced from the point where the three were originally standing on the sidewalk, nor did they physically participate in the actual attack upon Casselman. Additional evidence further involving Le Grant is found in the testimony of police officers who took statements from him following the incidents in question, to the effect that after he got out of his car he went over and kept the people back in order to see that it was a fair fight and that they fought together without anyone "butting in."

The autopsy disclosed a marked dislocation of the fifth cervical vertebra, caused by a blow of some kind, of a nature to cause a complete paralysis from the shoulders down. The area of the scalp back of the left ear was torn and crushed with a profuse subdural hemorrhage over the base of the brain due to trauma and causing the death. There was no evidence of any bruise or injury to the face or any other part of the body. The autopsy surgeon testified further that, while the type of injury here found is not the kind usually caused by striking with the fist or hand, it is of a character usually associated with a solid object coming into contact with the back of the head with great force, such as by a fall.

Each appealing defendant contends that the evidence adduced at the trial was wholly insufficient to support his conviction of the crime of manslaughter, a felony.

Manslaughter, as defined by Penal Code, section 192, is the unlawful killing of a human being, without malice. It is of two kinds: Voluntary—upon a sudden quarrel or heat of passion; and involuntary—in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner,

or without due caution and circumspection. "And it is held that while in the first kind there must be present an intent to kill, in the second kind such intent is not essential. In other words, in cases of voluntary manslaughter, although the elements of malice and premeditation are wanting, an intent to kill must exist, and the question of its presence becomes one of fact for the jury to determine from all the circumstances under which the homicide was committed. But involuntary manslaughter, as the code defines it, is the taking of life in certain unlawful ways without any intention of doing so (see cases cited in 13 Cal.Jur. 608); and consequently the killing is involuntary manslaughter 'where death occurred, without malice or any intent to kill, but in the commission of an unlawful act not amounting to a felony.' (13 Cal.Jur. 614.)" (*People* v. *Miller* (1931), 114 Cal.App. 293, 300 [299 P. 742].)

■ As to the defendant Vincent Poche, Jr., the evidence is sufficient to sustain the judgment of the court. From the acts of such defendant the court was justified in finding him to have committed an assault and battery upon the person of Casselman, constituting the commission of an unlawful act not amounting to a felony, and, death having resulted therefrom, the killing was involuntary manslaughter even though there was no intent to take life. This is true even though the evidence is insufficient as a matter of law to prove an intent to kill, and that consequently a case of voluntary manslaughter has not been established. (*People* v. *Miller, supra; People* v. *Bones* (1917), 35 Cal.App 429, 434 [170 P. 166]; *People* v. *Riley* (1945), 71 Cal.App.2d 170, 173 [162 P.2d 64].)

With reference to defendant Howard Le Grant, it is earnestly contended in his behalf that the record is entirely devoid of evidence showing any preconceived conspiracy or concert of action between Le Grant and Vincent, either as to any intended assault by the latter on Casselman or as to any intention on the part of Vincent to kill him, and that evidence is equally lacking to show such defendant to have participated directly, or to have aided and abetted Vincent in the commission of the act or acts causing the death. ■ However, the liability of a defendant for a criminal act is fixed by the provisions of sections 31 and 971, Penal Code, whereby all persons "concerned" are principals, whether directly, or by aiding and abetting in its commission, and conspiracy or concert of action, comprehend nothing that is not included in the definition of "who are principals." (*People* v. *Talbott* (1944),

65 Cal.App.2d 654, 665 [151 P.2d 317]; *People* v. *Stein* (1942), 55 Cal.App.2d 417, 420 [130 P.2d 750].) ▮ One may aid and abet without having previously entered into a conspiracy to commit a crime. (*People* v. *Bond* (1910), 13 Cal.App. 175, 185-186 [109 P. 150]; *People* v. *Wade* (1945), 71 Cal.App.2d 646, 652 [163 P.2d 59].)

▮ While mere presence alone of the accused at the scene of the homicide is not sufficient to make him a participant, nor is he necessarily guilty because he does not prevent it, his presence is a circumstance tending to support a finding that he is a principal. In order to have aided and abetted the person who actually committed the unlawful act, facts and circumstances must be adduced, tending to show that the accused aided such person by acts, or encouraged him by words or gestures, before a conviction can be sustained. (12 A.L.R. 279, 280, 281.) ▮ Not only must he aid such direct perpetrator by assisting or supplementing his efforts, but he must, with knowledge of the wrongful purpose of the perpetrator, abet such person by inciting or encouraging him to commit a crime. (*People* v. *Dole* (1898), 122 Cal. 486, 492 [55 P. 581, 68 Am.St.Rep. 50]; *People* v. *Bond, supra,* 13 Cal. App. 175, 185.)

▮ It need not be shown, however, that such direct perpetrator communicated his purpose to the accused in order to make him liable as an aider and abettor, for he would be liable as such if he were present, and knew the intention of the other, and either by acts, words or gestures, aided or encouraged the commission of the crime. But he would be guilty only to the extent of his knowledge or of the natural and reasonable consequences of the acts aided or encouraged by him. (*People* v. *Bond, supra,* p. 185; 7 Cal.Jur. § 39, p. 890, and § 13, p. 853; 26 Am.Jur. § 68, p. 205.)

▮ Applying the evidence herein, as it relates to the defendant Le Grant, to the foregoing rules of law, we are unable to agree that the judgment of conviction of such defendant is so lacking in evidentiary support as to require its reversal. Le Grant was the owner and operator of the automobile from which the challenging remarks emanated. It was within his power to have ignored the acceptance of such challenge by Casselman and to have driven on, thus entirely avoiding the violent and unlawful controversy which he must have known might follow if both such cars stopped. Nevertheless he turned into the curb ahead of Casselman, got out of his car in com-

pany with the two Poche brothers, and stood with them at the rear of such automobile, watching the soldier approach them. Le Grant was standing immediately adjacent to Vincent when the latter launched his vicious attack and made no effort by either word or deed to restrain the latter during any part of the ensuing proceedings. Indeed, by his own statements, he gave active aid, encouragement and assistance to Vincent by taking such an affirmative part as to keep other people back who might have "butted in" and have thus prevented the tragedy. By so doing he acted with full knowledge that an assault and battery was in progress, the reasonable and natural consequence of which might be a serious injury to, or possibly the death of, either or both of the combatants. Such a course of conduct on the part of Le Grant constituted an aiding and abetting of Vincent in the unlawful assault and battery and resulting homicide, thus making him also liable as a principal for the crime of involuntary manslaughter. (See *People* v. *Marty* (1922), 59 Cal.App. 503 [210 P. 964] ; *People* v. *Blackwood* (1939), 35 Cal.App.2d 728, 732 [96 P.2d 982] ; *People* v. *Mummert* (1943), 57 Cal.App.2d 849, 855 [135 P.2d 665] ; *People* v. *Wade, supra,* 71 Cal.App.2d 646, 652; *People* v. *Bowers* (1922), 56 Cal.App. 80 [204 P. 548] ; *State of Missouri* v. *Darling* (1909), 216 Mo. 450 [115 S.W. 1002; 129 Am.St.Rep. 526, 23 L.R.A.N.S. 272] ; and (with note) 23 L.R.A.N.S. 272.)

The judgment and order are affirmed as to each appealing defendant.

Desmond, P. J., and Wood, J., concurred.