## State of Connecticut *v.* Peter Genova

Inglis, C. J., Baldwin, O'Sullivan, Wynne and Daly, Js.

Argued June 1—decided June 29, 1954

*Edward G. Burstein,* with whom, on the brief, was *Bernard Green,* for the appellant (defendant).

*Otto J. Saur,* assistant state's attorney, with whom, on the brief, was *Lorin W. Willis,* state's attorney, for the appellee (state).

BALDWIN, J. The defendant was presented for the violation of General Statutes, § 8675, which forbids policy playing. He was found guilty in a trial to the court and has appealed. He claims that the court erred in finding him guilty when the evidence did not establish his guilt beyond a reasonable doubt, in certain conclusions of facts, and in a ruling on the admission of testimony.

The information accused the defendant of policy playing and charged that he "did engage in the sale or exchange of policy slips or tickets, for the purposes of wagers and gambling, against the peace and contrary to the form of the statute in such case made and provided." He concedes that the information was, "on its face, good and sufficient." He argues, however, that the statute describes with great particularity what acts or series of acts shall constitute a violation of it. He claims that there was not sufficient evidence, or, indeed, any evidence, of "any sale or exchange whatsoever of any policy slips by the defendant or by anyone else." The portion of the statute pertinent to the disposition of these claims is as follows: "Any person . . . who . . . shall write, sell, bargain, exchange, give, transfer, deliver, buy, collect or receive, or be concerned in writing, selling, bargaining, exchanging, giving, transferring, delivering or receiving, any policy slips, tickets, tokens, numbers or chances, used in said game of chance, business, scheme or occupation,

or in wagering or betting upon the result of any drawing in any lottery, or in any drawing of any numbers by chance," shall be subject to the penalties provided in the statute. General Statutes § 8675.

The defendant did not himself testify or offer any other evidence. The following facts could reasonably have been found: In the game of policy, the player selects a combination of three digits upon which he bets his money, from one penny up. He transmits these numbers by telephone or otherwise to the one taking the bet, who records them, together with the amount placed. The winning combination is determined by taking the last whole number in the winnings of the first three horse races at some race track—in this instance, Hialeah, Florida—as the first digit, the last whole number in the winnings of the first five races as the second digit, and the last whole number in the winnings of the first seven races as the third digit. The one making the wager can check the success of his bet from the horse-racing reports carried daily in a well-known New York newspaper.

On January 12, 1953, shortly after 1 o'clock in the afternoon, Lieutenant Halpin of the Bridgeport police department and Detectives Ford, Witt and Beardsworth went to a two-family house at 192 Harriet Street in Bridgeport. They had a search and seizure warrant. Ford, Witt and Beardsworth entered the ground-floor apartment by a rear door which opened into the kitchen. Halpin entered the living room through the front door. He found the defendant watching television. He and the defendant went into the kitchen, where they joined the three detectives. Meantime, in a bedroom adjoining the kitchen, the detectives had discovered the defendant's wife seated at a desk on which there were

a telephone, a memorandum pad and fifteen sheets of paper, each of which contained a date, some names or initials of individuals, and columns of figures. These papers were later identified as records of bets placed in the game of policy playing. The police officers took them into their possession. When Halpin stated, in the defendant's presence, that the defendant's wife would have to be taken into custody, the defendant said, "[T]hat is my stuff there," meaning the sheets of paper found on the desk, and "[T]here is about $30 worth there." Races were to be run that afternoon at Hialeah Park. A computation of the slips showed that a sum of $244.05 had been placed as bets against the numbers on the sheets of paper. The trial court concluded that the sheets of paper belonged to the defendant, that they were used for policy playing and recorded bets made that day against the numbers on them, and that the defendant was guilty as charged.

The evidence did not establish that the defendant had personally sold or exchanged any ticket or policy slip in the sense of making an actual transfer of some tangible article. But proof of the sale and actual transfer of a policy slip or ticket as a record of a bet to the one placing it was not necessary. The information charged that the defendant "did engage in the sale or exchange of policy slips or tickets." The wording of the statute is sufficiently broad to encompass not only the actual act of selling or exchanging some tangible object in the form of a slip or a ticket but also being "concerned" with selling or exchanging it. See *State* v. *Mola,* 128 Conn. 407, 409, 23 A.2d 126. One is concerned in a certain matter when he has some connection with it. when it affects his interests or involves him. Then, too, one is "engaged" in an affair when he is

involved with it or has some interest in it. Webster's New International Dictionary (2d Ed.). The intent expressed by the statute is to make one who participates, is involved or has an interest in the acts proscribed subject to the penalties set forth. *State* v. *Bach Liquor Co.,* 67 Ark. 163, 167, 55 S.W. 854; *People* v. *Marty,* 59 Cal. App. 503, 507, 210 P. 964; *Motley* v. *Commonwealth,* 177 Va. 806, 809, 14 S.E.2d 28; see *Sweeney* v. *Independent Order of Foresters,* 179 N.Y.S. 94, 96, aff'd, 190 App. Div. 787, 181 N.Y.S. 4; *People* v. *Photocolor Corporation,* 156 Misc. 47, 52, 281 N.Y.S. 130. It is sheer indulgence in the technicality of ancient common-law pleading, where the great number of crimes punishable on the gibbet made it necessary to resort to fine-spun reasoning to save the neck of the victim, to say that an information which charges that an accused "did engage" in doing a prohibited act is not comprehended by a statute which forbids being "concerned" in doing it.

The defendant admitted to the police that he owned the papers which were identified as policy slips. This fact, together with the further fact that these slips were actually records of bets obviously taken by the defendant's wife over the telephone, while the defendant was in an adjoining room, at a time of day, before the races, when such bets would ordinarily be recorded, justified an inference that the defendant, acting through his runners, had been engaged in selling policy slips or their equivalent to others. The evidence was sufficient to indicate to a reasonable person such a strong probability of the defendant's concern or engagement in the taking of the bets that an explanation or denial could reasonably be expected. It was sufficient to make out a prima facie case which a court would be warranted

in submitting to a jury. *State* v. *Rich,* 129 Conn. 537, 540, 29 A.2d 771; *State* v. *McDonough,* 129 Conn. 483, 487, 29 A.2d 582. The defendant failed to take the witness stand himself or offer any testimony in his own behalf. The trial court was justified in drawing an inference from this circumstance and all the other evidence that the defendant was guilty beyond a reasonable doubt. *State* v. *Gudones,* 121 Conn. 704, 185 A. 414; *State* v. *Nelson,* 139 Conn. 124, 127, 90 A.2d 157; *State* v. *Grosso,* 139 Conn. 229, 232, 93 A.2d 146.

The defendant assigns error in the admission of testimony from a police lieutenant that certain papers seized when the defendant was taken into custody and which he admitted belonged to him were policy slips. The matter was one calling for the testimony of a qualified expert, and the evidence was properly admitted. *Temple* v. *Gilbert,* 86 Conn. 335, 344, 85 A. 380.

There is no error.

In this opinion INGLIS, C. J., WYNNE and DALY, Js., concurred.

O'SULLIVAN, J. (dissenting). The information charged the defendant with a violation of § 8675 of the General Statutes in that on January 12, 1953, at Bridgeport, he engaged in the sale or exchange of policy slips or tickets, for the purpose of wagers and gambling. On its face this stated a good charge. The flaw in the court's judgment, however, is that, regardless of what other violations of the statute the defendant may have committed, the state did not establish the one of which it sought to prove him guilty.

Section 8675[1] is captioned "Policy playing; gaming

---

[1] "Sec. 8675. POLICY PLAYING; GAMING BY USE OF LOTTERY SLIPS OR TICKETS. Any person, whether a principal, agent or servant, who

by use of lottery slips or tickets." The statute is lengthy and replete with prohibitions. Of these, the state's attorney selected the one incorporated in the information. Although he could have added any others which he believed the defendant had transgressed, he failed to do so. He did not, for example, charge the defendant with owning or maintaining a policy office, as he might have done, or with taking part in any way in betting or wagering. The state's

shall own, possess, keep, manage or maintain, or who shall assist in keeping, managing or maintaining any policy-office or place where the game of chance, business, scheme or occupation, commonly known as policy, is, or is reputed to be, played or carried on, or any place where bets or wagers are, or are reputed to be, made upon the result of a drawing in any lottery, or of the drawing of any numbers by chance, or any place which is, or is reputed to be, resorted to for any such purposes in whole or in part, or shall write, sell, bargain, exchange, give, transfer, deliver, buy, collect or receive, or be concerned in writing, selling, bargaining, exchanging, giving, transferring, delivering or receiving, any policy slips, tickets, tokens, numbers or chances, used in said game of chance, business, scheme or occupation, or in wagering or betting upon the result of any drawing in any lottery, or in any drawing of any numbers by chance, or shall collect or receive, or be concerned in receiving or collecting any money or other valuable thing for any such slips, tokens, numbers or chances, or shall play or take part in any way in such game of chance, business, scheme, occupation, betting or wagering, in or out of any such office or place, or shall frequent any place or office where the game of chance, business, scheme or occupation, commonly known as policy, is, or is reputed to be, played or carried on in whole or in part, or any place where wagers or bets are, or are reputed to be, made upon the result of any drawing in any lottery, or of any drawing of any numbers by chance, or shall frequent any place which is, or is reputed to be, resorted to for any of such purposes in whole or in part, or shall make, manufacture or keep, or be the custodian of, any slips, tokens, papers, books, records or registers of bets or wagers, or any appliances or apparatus used for any such purposes, shall be fined not more than one hundred dollars or imprisoned not more than six months or both. Any owner, mortgagee in possession, lessee or occupant of any building, room, structure or place, or part thereof, who shall knowingly permit the same to be used or occupied for any of the purposes mentioned in this section, shall be fined not more than one hundred dollars or imprisoned not more than six months or both."

attorney limited his accusation to a violation of that provision of the statute which prohibits the sale or exchange of policy slips or tickets in order to promote wagers and gambling. The defendant had the constitutional right to assume that the information set forth the exact charge for which he was to be tried and upon which he was ultimately to be convicted or discharged. Conn. Const. Art. I § 9; U.S. Const. Amend. VI. Nothing is more elementary in criminal law than that an accused is required to defend only against the charge alleged. *State* v. *Scott,* 80 Conn. 317, 321, 68 A. 258; see *State* v. *DiLorenzo,* 138 Conn. 281, 284, 83 A.2d 479.

An essential element of the crime, then, which the state had to establish beyond a reasonable doubt, if a legal conviction was to follow, was the sale or exchange of policy slips or tickets on the part of the defendant. At the time of the search of the defendant's home, the police found, near a telephone, several large sheets of paper upon each of which was recorded a long list of wagers. Calling an elephant a giraffe will not make it one, and calling these sheets of paper policy slips or tickets, as the state's attorney insists on doing, is merely indulging in an attempt at semantic legerdemain and is futile as a method of altering what the sheets actually are, namely, records of bets, and, in all probability, bets taken over the telephone. But the state's attorney finds it essential to maintain the position he has taken. He conceded, during oral argument, that unless the sheets were policy slips or tickets his case against the defendant would collapse, since there was no proof, direct or by inference, of the existence of any other slips or tickets or of their sale or exchange.

My colleagues escape from this dilemma by observing that the defendant admitted to the police his

ownership of the sheets of paper found in his home and "identified as policy slips." "This fact," they continue, "together with the further fact that these slips were actually records of bets obviously taken by the defendant's wife over the telephone . . . justified an inference that the defendant, acting through his runners, had been engaged in selling policy slips or their equivalent to others." This is a good example of blowing hot and cold. As was pointed out by the state's attorney, the state relied exclusively on the fact that the sheets of paper were the only proven slips or tickets. But, as is noted above, the sheets could not have been what the state's attorney wished them to be, since they consisted only of lists of bets.

Because of this, my colleagues have gone far afield, it seems to me, and, indeed, contrary to the conceded state of the evidence, by interjecting into the opinion the statement that the defendant, "acting through his runners, had been engaged in selling policy slips or their equivalent to others." Just what the majority mean by the words "their equivalent" is left obscure. The statute certainly makes no reference to them. But that aside, there is not a scrap of evidence on the part of anyone that the defendant had "runners" or that either he or they sold or exchanged slips or tickets. I find myself in complete discord with the opinion and the basis upon which the conviction is sustained. As I view the case, it is far more important to preserve the requirements of proof required in criminal matters than to hold this particular defendant guilty upon the evidence presented in this record. See *State* v. *Skinner*, 132 Conn. 163, 168, 43 A.2d 76.