STATE OF CONNECTICUT *v.* JAMES DELVECCHIO

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

550

Argued June 6—decided July 1, 1958

*Arthur Levy, Jr.,* with whom, on the brief, was *Irwin E. Friedman,* for the appellant (defendant).

*Lorin W. Willis,* state's attorney, for the appellee (state).

KING, J. The defendant was convicted in a trial to the court under an information charging that he "did engage in the sale or exchange of policy slips or tickets, all of which were being used in the game of chance," in violation of the provisions of § 8675 of the General Statutes. One of the assignments of error is that the court erred "[i]n concluding upon all the evidence that the defendant was guilty of the crime charged beyond a reasonable doubt." No error is assigned in any interlocutory rulings made during the trial. It is therefore unnecessary to consider detailed claims for correction of the finding. *State* v. *Malm,* 142 Conn. 113, 115, 111 A.2d 685; *State* v. *Foord,* 142 Conn. 285, 286, 113 A.2d 591; *State* v. *Nelson,* 139 Conn. 124, 125, 90 A.2d 157. The defendant chose neither to take the stand nor to offer any evidence in his own behalf. Only if the state made out a prima facie case of guilt could an adverse inference be drawn from the failure of the defendant to testify in his own behalf. *State* v. *McDonough,* 129 Conn. 483, 487, 29 A.2d 582; *State* v. *Tomassi,* 137 Conn. 113, 119, 75 A.2d 67; *State* v. *Nelson,* supra, 127. A prima facie case of guilt, within the meaning of the above rule, may be made out even though the state's evidence is entirely circumstantial. *State* v. *Nelson,* supra.

One who participates, is involved or has an interest in the sale or exchange of policy slips is criminally liable under the statute. *State* v. *Genova,* 141 Conn. 565, 569, 107 A.2d 837. It is not necessary to prove an actual sale of a policy ticket by the accused in order to secure a conviction under an information charging, as did the one in this case, that the accused "did engage in the sale or exchange of policy slips." Id., 568.

With this background we turn to the evidence

offered by the state. There was evidence from which the court could reasonably find the facts as hereinafter summarized. On the day in question, a blue Cadillac car had been parked for about half an hour near an intersection in Bridgeport, and during this period, on two separate occasions, a man was observed entering the car and later leaving it. The defendant and Anthony Rizzo then entered the car and drove away. The defendant operated the car and Rizzo was a passenger in the front seat. When shortly thereafter the defendant was stopped by a police car, he attempted to back away but was prevented by another police car from moving the Cadillac more than a few feet. As the Cadillac was forced to a final stop, Rizzo, at the direction of the defendant, threw a blue bag out of it. The contents of the bag consisted of fifteen bundles of policy slips for bets totaling over $2700. Each bundle was separately marked, and each slip in it bore the code number of the particular runner who had written the slips in that bundle. Two similar bags, empty, were found in the glove compartment of the Cadillac, and in the trunk was a large carton containing about 150 blank pads in sets of three sheets with serial numbers, identical in form with the policy slips found in the blue bag thrown from the car. After his arrest, the defendant requested that Rizzo be given a "break" because he had no part in what was going on, and admitted that he told Rizzo to throw out the bag.

The defendant laid great stress on the fact that the foregoing admissions by him, which were testified to by police officers, were not mentioned in the written report to the officers' superior. This circumstance merely went to their weight. The officers may well have lacked the legal training necessary to ap-

preciate the significance of the defendants' admissions at the time they were made. The defendant was at liberty, if he had so chosen, to testify, if such was the truth, that he had never made the admissions, or, if he had made them, to explain them if in fact they were susceptible of any explanation favorable to him. *Berger* v. *Guilford,* 136 Conn. 71, 83, 68 A.2d 371. He did neither. The court was not in error in crediting the admissions.

A police officer, called by the state and qualified as an expert witness, testified that the slips were of the sort used in policy playing and also explained the significance and meaning of the markings thereon, in accordance with the modern method of prosecuting cases of this type. *State* v. *Genova,* 141 Conn. 565, 570, 107 A.2d 837. This expert testimony furnished a basis for the court's conclusion as to the incriminating character, under the crime charged in the information, of the bundles and slips with the notations thereon. *State* v. *Tolisano,* 136 Conn. 210, 215, 70 A.2d 118.

The evidence warranted a finding that the state had made out a prima facie case of guilt, that is, a case where "the evidence indicates to a reasonable person such a strong probability of guilt that a denial or an explanation by the defendant is reasonably called for." *State* v. *Nelson,* 139 Conn. 124, 127, 90 A.2d 157. The court did not err in concluding, upon all the evidence, that the defendant had been proven guilty, beyond a reasonable doubt, of the crime as charged.

There is no error.

In this opinion the other judges concurred.