The defendant was convicted in a trial to the court upon an information charging that on or about December 18, 1961, at New Haven, he "did commit the crime of policy playing in violation of P.A. 528, § 2 of the General Statutes." He has assigned error in the denial of requested changes in the finding, in the conclusions of the court as unsupported by the subordinate facts, in rulings on evidence, and finally "(i)n concluding upon all the evidence that the defendant was guilty of the crime charged beyond a reasonable doubt." "Upon this last assignment of error, we determine from the entire evidence whether the court erred in holding that guilt was established by the requisite degree of proof. It is, therefore, unnecessary to consider in detail the claims of error directed to the finding."State v. Pundy, 147 Conn. 7, 8.
The statute, § 53-298, as amended, is captioned: "Policy playing; gaming by use of lottery slips or *Page 482 
tickets." The statute is a single, long, involved sentence, "prohibiting a long list of acts done in connection with the making of bets or wagers . . . in any lottery." State v. Johnson, 140 Conn. 560, 564. It "is lengthy and replete with prohibitions." State
v. Genova, 141 Conn. 565, 571. On its face, the information contained a good charge. Practice Book § 344(b). The fault, if any, lay in the lack of specific allegations and could have been remedied by a motion for a bill of particulars. State v. Mola,128 Conn. 407, 410. None was made in this case. The state, by its procedure in the trial, in effect, elected to, and did, rely for conviction of the defendant upon the charge of owning or maintaining a policy office or place. Several times during the course of the trial, the court alluded to "the first part of the statute" as the transgression upon which the accused was being charged and tried; and at another point in the trial it said: "The state, as I understand it, is proceeding under maintaining a place for policy playing."
An essential element of the crime, then, which the state had to establish beyond a reasonable doubt, if a legal conviction were to follow, was that the defendant owned or maintained a policy place or office within the meaning of the statute. On December 18, 1961, at about 12:30 p.m., Detective Ahern, attached to the special services division of the New Haven police department, together with Detectives Widmann, Holohan and Dixon, went to the defendant's novelty shop, known as the B. L. Gift Shop, located at 640 Congress Avenue, New Haven. They had a search and seizure warrant. The defendant, upon being informed that the police officers had a search warrant, said: "Go ahead and search." A search of the defendant's premises uncovered no incriminating evidence or contraband property. While they were still engaged in the search, a young woman *Page 483 
entered the store. She had a piece of paper in her left hand. It contained six sets of three-digit numbers. The officer testified: "When I questioned [her] in regard to these numbers, she denied they were lottery bets and denied ever giving bets to Marra." She was permitted to leave the premises. The state did not call her as a witness, nor was the piece of paper laid in evidence. The prosecuting attorney conceded, during oral argument, that he was unable to connect her with his case against the defendant.
At about 1:05 p.m., a young boy entered the store. He, too, was questioned by the detectives. His statements were mere hearsay and therefore are inadmissible as evidence against the defendant. While under arrest and in custody under a criminal charge, the defendant was taken to the boy's home and confronted by the boy's mother, who made accusatory statements in his presence and hearing. He not only heard but fully understood and comprehended the nature of her accusations. The defendant preferred to remain silent. This he had a right to do. "But when the accused is in custody, our law accords to him the right to reply to question or statement, or to remain silent. His silence under such circumstances cannot be laid in evidence against him."State v. Ferrone, 97 Conn. 258, 266; State v. Bates,140 Conn. 326, 329. "If a person is in custody on a criminal charge, mere silence should afford no inference whatever of acquiescence in statements of others made in his presence. He has the undoubted right to keep silent as to the crime with which he is charged; he is not called upon to reply or contradict such statement." 2 Jones, Evidence (5th Ed.) § 389, p. 726; 2 Wharton, Criminal Evidence (12th Ed.) p. 166. The boy's mother was called as a witness for the prosecution, but her testimony, such as it was, was extracted with some difficulty. She denied that *Page 484 
she sent her son to the defendant's establishment on December 18, 1961. Upon further questioning by the prosecuting attorney, the witness claimed the privilege which bars compulsory disclosure of any fact which would tend to incriminate her.
In a prosecution for a violation of the statute condemning policy playing, there must be sufficient evidence connecting the accused with the offense charged. 54 C.J.S. 875. It is our view that the evidence in this case was insufficient to establish that the defendant was guilty of the crime charged, for under our adjudicated cases it takes something more than proof of suspicious circumstances to sustain a conviction. See such cases, involving policy playing, as State v. DelVecchio, 149 Conn. 567
(policy bets and paraphernalia found in defendant's automobile and on his person; conviction reversed on other grounds); State v. Fico, 147 Conn. 426, 428
("defendant was arrested in the home of Frank Pagliuca, where there were found `Every Day' lottery bets, tally sheets, and a daily baseball line, all in the defendant's handwriting"); State v. DelVecchio,145 Conn. 549, 552 (defendant admitted that a bag, found to contain policy slips, had been, at his direction, thrown out of the car he was driving at the time of his arrest); State v. Genova, 141 Conn. 565,569 ("defendant admitted to the police that he owned the papers which were identified as policy slips"); State v. Johnson, 140 Conn. 560, 564 ("defendant had on his person slips which were records made in connection with the playing of policy or the numbers game"); State v. Plant, 22 Conn. Sup. 436,437 (defendant, on a number of occasions, was seen on a street in the vicinity of a hallway entrance and was observed by police to put his hand in one of three mailboxes in the hallway; policy slips were found in two of the boxes); State v. Jiminez,22 Conn. Sup. 340, 342 (undisputed evidence that the *Page 485 
store premises and the cash register were in the possession of defendant; the policy slip was found in a place of concealment, on the cash register);State v. Ragozzino, 23 Conn. Sup. 181 ("everyday lottery bets" found on defendant's stand-up desk, located in his office); State v. Bailey, 23 Conn. Sup. 405
(policy slips found in the possession of defendant pursuant to a warrant to search his premises, car and person).
"As [we] view the case, it is far more important to preserve the requirements of proof required in criminal matters than to hold this particular defendant guilty upon the evidence presented in this record." O'Sullivan, J., dissenting in State v. Genova,
supra, 573. "In the trial of a person charged with the commission of a crime, it is more important to enforce the time-tested safeguards which the law has erected for the protection of the innocent than to distort and subvert them in order to block the escape from punishment of even an apparently guilty person. Such has ever been the policy of this state." State v. Doucette, 147 Conn. 95, 108. We conclude that the evidence taken as a whole is insufficient to sustain a finding of guilty.
 There is error, the judgment is set aside and the case is remanded with direction to render judgment that the defendant is not guilty and ordering that he be discharged.
In this opinion KINMONTH and GEORGE, Js., concurred.