## DOLFF v. UNITED STATES.

### MEYERS v. SAME.

### PROOST v. SAME.

Nos. 4734, 4735, 4744.

Circuit Court of Appeals, Seventh Circuit.
Nov. 16, 1932.

Kenneth C. Charlton, of Birmingham, Ala., and Harry I. Weisbrod, of Chicago, Ill., for appellant Dolff.

Gerald T. Wiley, of Chicago, Ill., for appellant Proost.

George E. Q. Johnson, U. S. Atty., Dwight H. Green, U. S. Atty., and Daniel Anderson, Asst. U. S. Atty., all of Chicago, Ill., for the United States.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

Appellants, with fifty-seven other natural persons and two corporations, were charged by indictment with having entered into a conspiracy, continuing from January 1, 1927, to June 26, 1931, to manufacture, transport, and sell intoxicating liquor, in violation of U. S. Criminal Code, § 37, 18 U. S. C., § 88 (18 USCA § 88).[1]

The substantive offenses referred to in the alleged conspiracy are defined in section 3 of title 2 of the National Prohibition Act, 27 U. S. C. § 12 (27 USCA § 12).[2]

[1] Criminal Code, § 37: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of ·the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both."

[2] Section 3, title 2, National Prohibition Act: "No person shall manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this chapter, and all the provisions of this chapter shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented.

"Liquor for nonbeverage purposes and wine for sacramental purposes may be manufactured, purchased, sold, bartered, transported, imported, exported, delivered, furnished and possessed, but only as herein provided, and the commissioner may, upon application, issue permits therefor: Provided, That nothing in this chapter shall prohibit the purchase and· sale of warehouse receipts covering distilled spirits on deposit in Government bonded

The indictment charges that appellants, with the other named defendants, each of the "Eastern Division of the. Northern District of Illinois, continuously throughout the period of time extending from, to wit, January 1, 1927, until the date of the finding and presentation of this indictment, in said division and district, unlawfully and feloniously have conspired, combined, confederated, and agreed together, and with divers other persons to said grand jurors unknown, to commit divers. offenses against the United States, to wit, one hundred offenses, each to ·consist in said conspirators manufacturing at the several places referred to in the 'Overt Acts,' hereinafter set forth, and at divers other places, (the exact location of such other places being to the said grand jurors unknown), a large quantity, to wit, twenty thousand gallons of intoxicating liquor, to wit, alcohol, fit for use for beverage purposes, otherwise than as authorized by the National Prohibition Act; that· is to say, without said conspirators first having obtained a permit from the Commissioner of Internal Revenue of the United States, from his authorized assistant or agent, or from any other proper officer of the United States, so to do, and for beverage purposes; and divers, to wit, ten thousand other offenses, each to consist in said conspirators transporting, for beverage purposes, a large quantity, to wit, alcohol, from some one of said places of manufacture, in said division and district, to some other place to said grand jurors unknown; and divers, to wit, ten million other offenses, each to consist in said conspirators selling, at some one of said places of the manufacture thereof, in said division and district, or at some other place to said grand jurors unknown, for beverage purposes, a quantity, to wit, one pint or less of such intoxicating liquors, to wit, alcohol."

Appellants filed demurrers to and motions to quash the indictment, which were overruled. The cause was tried by jury, and at the close of the government's evidence, and also at the close of all the evidence, appellants separately moved for a directed verdict and to exclude from the consideration of the jury the testimony of certain witnesses, which motions were overruled. The jury returned a verdict of guilty as to each appellant; and, after overruling their separate motions in arrest of judgment and for a new trial, the court adjudged them guilty and imposed sentence. Each appellant made timely exception to each adverse ruling.

warehouses, and no special tax liability shall attach to the business of purchasing and selling such warehouse receipts."

■ It is contended by appellants that the indictment is fatally defective for the reason that, inasmuch as there are exceptions in the enacting clause of the National Prohibition Act, an indictment for conspiracy to violate it must show that appellants are not within the excepting clause. The contention must be decided adversely to appellants because of sections 32 and 33 of title 2 of the National Prohibition Act (41 Stat. 317; 27 U. S. C. §§ 49 and 50 [27 USCA §§ 49, 50]) which read as follows:

Sec. 32. " * * * It shall not be necessary in any affidavit, information, or indictment to give the name of the purchaser or to include any defensive negative averments, but it shall be sufficient to state that the act complained of was then and there prohibited and unlawful, but this provision shall not be construed to preclude the trial court from directing the furnishing the defendant a bill of particulars when it deems it proper to do so."

Sec. 33. " * * * the possession of liquors by any person not legally permitted under this title to possess liquor shall be prima facie evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this title * * * and the burden of proof shall be upon the possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed, and used."

See Keen v. United States (C. C. A.) 11 F.(2d) 260; United States v. Dwyer (D. C.) 13 F.(2d) 427; Carnahan v. United States (C. C. A.) 35 F.(2d) 96, 67 A. L. R. 1035.

■ It is further contended by appellants Dolff and Meyers that the evidence discloses only isolated infractions of the National Prohibition Act, so unconnected as to fail to constitute a general and comprehensive scheme or conspiracy.

A perusal of the record leaves no doubt that appellants Dolff and Meyers were extensively engaged in the manufacture, sale, and transportation of illicit liquor, and that their operations extended over a vast amount of territory and in more than one state. They owned and operated three stills, and had sixteen persons in their organization. They trafficked with public officers to secure safe transportation of their product, and disposed of many thousands of gallons weekly. When business was prosperous they would not sell less than 200 gallons at one time, and they had many customers who purchased much more than that amount. One of these patrons, by the name of Blumberg, was quite an extensive distributor in the vicinity of Clinton, Iowa, and Elgin, Ill., during 1928, 1929, and 1930. The record shows that appellant Dolff said he knew that Blumberg sold good liquor because he (Dolff) sold it to him. We are convinced that the activities of Dolff and Meyers, as set forth in the record, constituted more than isolated infractions of the law; they amounted to a conspiracy as charged in the indictment.

■ Over the objection of appellants Dolff and Meyers the court admitted evidence of the fact that, during the time in controversy, Martin Transfer Company of Aurora, Ill., purchased from Olive Can Company of Chicago about 8,000 empty one-gallon tin cans each week. This fact appellants Dolff and Meyers insist was prejudicial to their rights. The evidence shows that the cans received by the transfer company were from time to time taken from the company's warehouse by two men called George and Dave. The books of account of the transfer company show the names of "Mike" and "M. Meyers." These facts would render this evidence admissible. Under the circumstances, the weakness, if any, of the identification of appellants with relation to this transaction relates to the weight of the evidence rather than to its admissibility.

■ Government witness Ebsen was in the employ of codefendant Blumberg in 1928, and, by virtue of such employment, was hauling liquor by automobile from Elgin. During one week in the early part of 1928 he made three or four trips to Elgin for that purpose. In detailing his actions on the first trip, Ebsen testified that he went to the hotel and called by telephone the number given him by Blumberg. In answer to the question put by the district attorney, "Who did you ask for when you called the number?" Ebsen, by permission of the court and over appellants' objections, said, "He told me either Mike Meyers or Dave Dolff."

Appellants Dolff and Meyers contend there was error in the admission of that testimony which was prejudicial to them, because it was a statement of an alleged coconspirator made in the absence of appellants, and referred to matters with which they were in no manner connected and which occurred more than three years before the indictment was returned.

Ebsen then testified that on his first trip to Elgin he called for both Dolff and Meyers on the number given him by Blumberg and

that neither responded, but that the person who answered the call told him that some one would call at the hotel for Ebsen's truck. This was done, and the truck was delivered. About 3 o'clock in the morning the same person called at the hotel for Ebsen and took him in another car to the edge of the city, where the truck loaded with liquor was delivered to him. Ebsen stated that three or four other persons were at the place of delivery when he arrived, and that he thought Dave Dolff was there, although he said he was not positive as to Dolff's presence. Ebsen also gave the details of his second trip to Elgin and they were the same as the first, with the exception that appellant Meyers called for him at the hotel about 3 o'clock in the morning in a Studebaker car and took him to the edge of the city, where the delivery was made. These facts, considered in connection with Dolff's statement hereinbefore referred to—that he knew Blumberg sold good liquor because he (Dolff) sold it to him—convince us that there was no error in admitting Ebsen's evidence concerning Blumberg's instructions as to the telephone calls.

■ The fact that those instructions were given more than three years before the indictment was returned can make no difference, because other evidence fairly shows that appellants were then engaged in carrying out the conspiracy as charged in the indictment. Moreover, if the evidence objected to was not then competent as against appellants Dolff and Meyers, it was unquestionably competent as against Blumberg for the purpose of showing his connection with the then existing conspiracy.

■ It is further contended by appellants that the court erroneously refused to permit them to show entrapment by the government agents, by sustaining objections to certain questions put by them to government witnesses Goddard, Hitsman, and Erkilla.

Appellants have referred to no part of Goddard's cross-examination where the court sustained any objection to any question. The record shows, however, that objections were sustained to certain questions put by appellants on cross-examination to government witnesses Hitsman and Erkilla, who were prohibition agents. The questions propounded sought to establish the fact that the prohibition department, some time in April or May, 1931, had formulated a plan to entrap appellants by having its agents represent themselves to appellants as being engaged in the sale of liquor and to purchase from appellants considerable quantities at

many different times. A perusal of the record is quite convincing that there could have been no element of entrapment present, because appellants were then, and for several years prior to that time had been, carrying out the conspiracy charged in the indictment.

In support of their contention appellants cite O'Brien v. United States, 51 F.(2d) 674, 680, a decision of this court, and also Lewis et al. v. United States (C. C. A.) 4 F.(2d) 520. In each of those cases, however, the conspiracy was originated and carried out by officers for the purpose of getting the defendants to participate in it. In the instant case no such state of facts could have existed, because the conspiracy was originated by appellants and their co-workers. The distinction is stated in the O'Brien Case as follows: "We think there is a vast difference between the use of decoys for the purpose of discovering crimes and apprehending criminals and the use of decoys to induce others to join an unlawful conspiracy originated by the government for the purpose of securing the violation of laws by others." There was no error in the court's thus limiting the cross-examination.

■ At the trial the court, over the objection of appellants Dolff and Meyers, permitted certain officers and an employee of the respective telephone companies operating at Clinton and Aurora to give evidence of tabulation of the tolls charged to Mike Blumberg of Clinton and Michael Meyers and Louis Israel of Aurora. These tabulations were also admitted in evidence. It is admitted that there was no objection made as to their correctness or because the original recorders did not testify. The objection was based on the following grounds: (1) Absence of proof of identity of the persons making the calls; (2) absence of proof of conspiracy; and (3) records of telephone calls are hearsay. No part of the substance of the messages was revealed, nor was any caller's name disclosed, but the numbers of the phones from which the calls were made and those of the phones called were given, and in many instances the first or last name of the person called was given. These tabulations show that many calls were made from the Israel phone at Aurora to the Blumberg phone at Clinton. They also show calls from the Blumberg phone to the Israel phone and to Michael Meyers' phone at Aurora, and they also show calls from the Meyers phone to the Blumberg phone. Blumberg, Israel, and appellants Dolff and Meyers were tried at the same time and for the same offense.

The trial court based its ruling on the theory that it was proper to show repeated communications between the phones referred to. So far as the evidence shows, Blumberg, Israel, and appellants Dolff and Meyers paid for the tolls charged to their respective phones. This fact, in the absence of explanatory evidence, tends at least to establish identity of the caller, and for that reason the evidence was admissible against the owner of the phone from which such call was made.

The objection of Dolff and Meyers to the admissibility of said tabulations on account of the absence of proof of conspiracy cannot be sustained. At the time this evidence was admitted there was an abundance of other competent evidence in the record from which the jury could have rightfully concluded that said conspiracy then existed as to said appellants and Blumberg, and that they were then extensively engaged in carrying out its provisions. The contention that such evidence is hearsay is without merit, and we are convinced that the admission of the evidence now under consideration was proper.

It is further contended by Dolff and Meyers that the court erred in admitting that part of the testimony of prohibition agent Hitsman relative to a conversation between himself and Dick Price of Waterloo, Iowa, a defendant who was tried and convicted with appellants. This conversation was held at Aurora on May 9, 1931, at the "speakeasy" of Harriette Fritts, where Hitsman immediately before had met appellant Dave Dolff at the latter's request and had purchased from Dolff sixty gallons of liquor. While Dolff was out filling the order Price entered the room and engaged Hitsman in conversation and said, among other things, that he had been buying from Dave and his outfit for the last six years; that he used to have a can (still) himself, but he was now buying all his stuff at Aurora; that at one time he got about one hundred gallons that had a kind of bluish color and rather bad smell, but that he had returned ninety-six gallons to Dave, who immediately made it good; and that he could buy cheaper stuff at other places but it was not as good. The basis of the objection is that declarations made by an alleged conspirator in the absence of his alleged coconspirators are not competent to prove the conspiracy, nor for any other purpose unless of a character in furtherance of the conspiracy theretofore existent.

■■ The record shows that appellants Dolff and Meyers made no objection to the admission of this testimony, but that after it was received they moved to exclude it and the court overruled the motion, and appellants reserved an exception to that ruling. There was no error in overruling the motion to exclude the testimony because there was no objection made to its admission. But, waiving the failure to make objection to its admission, we think the evidence was properly admitted to show Price's connection with the conspiracy, which the record unquestionably shows was existent at that time and in which appellants were engaged.

We are in accord with the statement of the district attorney that the evidence relied upon to sustain the conviction of appellant Proost is not overwhelming.

Witness Ebsen testified that Blumberg, in 1928, ran short of alcohol on two occasions and told him that he (Blumberg) would borrow some from Proost. Ebsen was thereupon sent by Blumberg to Proost's garage to get it. He got it each time from Proost's garage, and later returned the amount borrowed. On none of such occasions, however, did he see Proost.

Witness Johnson, a former policeman of Clinton, testified that in 1928 an unnamed man had been delivering liquor to Proost's garage. Witness told Proost it must be stopped and Proost said he would take care of him.

Witness Harrison, a former deputy sheriff, testified that about three years previous to the trial he had pursued Proost from Sterling to Fulton, Ill., and at that time Proost had 218 gallons of liquor in his car.

Prohibition agents Avery and Cooper saw Proost's wife drive an automobile out of the Proost private garage behind their residence in Iowa and they found twenty-seven gallons of alcohol in the car which she was then driving.

The second floor of the premises adjoining the Proost garage, which also belonged to Proost, was fitted up as a saloon, and liquor was found there, but Proost testified that he was in no way connected with it.

Facts were admitted in evidence that certain telephone calls were made from Louis Israel's phone and Mike Meyers' phone at Aurora to Proost's phone at Clinton. It was not shown, however, that Proost answered these calls or that he received the messages.

Three officers testified that Proost's reputation as a peaceful and law abiding citizen previous to the return of the indictment was bad.

It is stated in the government's brief that this is all the evidence in the record which tends to connect Proost with the conspiracy charged in the indictment, and we think that statement is correct. We are convinced that the evidence is not sufficient to sustain the charge as against Proost. There cannot be much doubt that he was violating the law in possessing, bartering, and transporting liquor, but there is no evidence that his transactions in these respects were in any way connected with the conspiracy in the Northern District of Illinois as charged in the indictment.

The judgment as to appellant Frank Proost is reversed, and as to appellants Dave Dolff and Mike Meyers it is affirmed.