TAMPA ELECTRIC COMPANY, a corporation, v. ALBERTA GETROST, a widow.

10 So. (2nd) 83                                        Division B
October 13, 1942

Knight & Thompson, for appellant;

Oxford & Oxford, and Ernest C. Wimberly, for appellee.

THOMAS, J.:

Appellee's action to recover damages for the death of her husband, alleged to have resulted from appellant's negligence, culminated in a verdict in her behalf. In the appeal the sufficiency of the testimony to establish liability is challenged and it is insisted that the evidence introduced by the defendant was adequate to substantiate the plea of contributory negligence. The only other question presented is the propriety of the trial court's ruling in admitting certain testimony given by a man who was, at the time of the mishap, assisting the deceased, Charles G. Getrost.

From the testimony in the case we learn that the electricity required for the white-way system of the city of Winter Haven was furnished by the appellant. The circuit became defective and the city directed one Franzman, whose duty it was to maintain the line, to make necessary repairs. Franzman employed Getrost, an experienced electrician, to do the actual work. In order to minimize, if not eliminate, any danger to

Getrost from electricity while he was working on the line, a preliminary conversation over the telephone was held between him and the operator of the plant where the electricity was controlled so that the latter could recognize Getrost's voice when he gave instructions from time to time with reference to opening and closing the switch which regulated the current. Orders given by the workman were repeated by the operator to obviate any misunderstanding.

From the testimony it appears that another precautionary measure was followed at the plant to insure the line would not be energized wtihout an express order from the person working on it. It was established that a placard bearing the name of the person doing the work was placed on the switch and that the switch was not to be operated except upon his personal instruction. Consequently, when Getrost began his task Franzman, his immediate employer, called the operator and instructed him to "tag" the line for Getrost. Thereafter, until some one should succeed Getrost, he was the only person who could order the switch opened or closed.

The result of the trial in the circuit court depended upon the interpretation placed by the jury on the testimony of witnesses about occurrences at the plant and at the scene of the fatal injury for the period of an hour following nine-thirty in the morning. The log kept by the plant operator showed: at nine-twenty Getrost ordered the circuit closed; at nine-twenty-eight he ordered it opened; and at nine-thirty-five he ordered it closed. According to the notations on appellant's record the current was broken at ten-sixteen and "tagged" for Franzman and Getrost and at ten-thirty-five the former called and ordered that the

circuit be "tagged" for him. It is the contention of the appellant that Getrost ordered the line energized at nine-thirty-five and that the switch was opened at ten-sixteen and labeled in the name of Franzman and Getrost because of a telephone message received then that some person had been injured.

The appellee asserts that Getrost called the appellant's plant after nine-thirty-five and instructed the operator to open the circuit, making it harmless. Testimony was introduced to show the giving of this order over the telephone and the actions of Getrost thereafter. Witnesses testified that he immediately took his assistant in a truck and drove to the office of his employer, Franzman; that the three men with slight delay returned to one of the white-way posts on which they were then working, situated, incidentally, almost directly in front of a funeral home where an ambulance was available; and that shortly thereafter as he attempted to handle the wires Getrost received a charge of electricity which killed him. There was proof that he was taken to a hospital where he arrived at approximately ten-forty-five.

Both appellant and appellee have presented their positions plausibly. If the testimony of either is considered independently of the other it is not difficult to arrive at the conclusion for which each contends. When, as appellant insists, the precautions taken at the electrical plant are considered in connection with the entries in the log it would seem that Getrost ordered the circuit energized at nine-thirty-five and some time between that hour and ten-sixteen was electrocuted, whereupon some one telephoned and ordered the circuit opened because a man had been injured. On the other hand, if the testimony of the appellee is

to be given credit Getrost was killed after he had ordered the circuit opened at ten-sixteen. In these circumstances we think that we should not interfere with the verdict of the jury and the consequent judgment because there is ample evidence to support the findings, Holstun & Son v. Embry, 124 Fla. 554, 169 So. 400, and we have found nothing in the record to show bias, Carlton v. King, 51 Fla. 158, 40 So. 191, injustice or palpable wrong, McSwain v. Howell, 29 Fla. 248, 10 So. 588.

The appellant maintains that his plea of contributory negligence was substantiated by testimony that the deceased, Getrost, had failed to use the insulated gloves which his employer had furnished him and had failed to follow directions to "ground" the wires upon which he was working. That he did not use the gloves and that he did not ground the wires were shown but it should be remembered, if the testimony of the appellee is true, that he had the right to believe that his instructions had been followed and the wires contained no electrical current at the time he was killed. We feel that the jury was justified in believing that the use of the gloves for the added precaution of determining whether any current was passing through the wires was unnecessary in view of these instructions. It was demonstrated that it would have been impractical for him to have worn the gloves at all times while he was working in the restricted space at the base of a white-way post and it does not appear to us logical that he should have been required continually to test the wires when the order to open the circuit had been received at the plant. The rules which we have given with reference to our interference with the verdict

are applicable in the consideration of this question and upon it we have the same view.

The remaining question relates to the correctness of the ruling of the trial court in denying a motion to strike certain testimony of the witness Lynch who, throughout the repair work, had been assisting Getrost. On his direct examination he testified at some length about use of the telephone by Getrost immediately prior to his death at the time it was contended by appellee he made the last call to the plant with reference to disconnecting the circuit. He did not hear the conversation but watched Getrost use the telephone and when the latter rejoined him he said he had had the circuit opened.

After all this testimony had been introduced on direct examination and after cross examination had proceeded to some extent the attorney for the appellant made his motion to strike, because it was hearsay, all the testimony about a report by Getrost to his helper that he had ordered the current discontinued. Even assuming that the objection was timely made (26 R.C.L. page 1046), still we think the testimony was admissible in view of all of the circumstances. It will be recalled that these two men had been working together and the witness was entirely familiar with the procedure of telephoning the plant operator each time the line was energized or the current interrupted. He knew of the memorandum, containing the telephone number, that Getrost used in calling the plant and evidently saw him on the last occasion follow the same procedure as on previous ones. Considering the entire experience of the witness as an assistant to Getrost, his familiarity with the methods they were following and the conduct of Getrost immediately

preceding the misfortune, it seems to us that the testimony cannot be said to have been improper.

We think the statement was not infected with the vices which make such declarations usually inadmissible. At the time it was uttered there was no occasion for it to have resulted from reflection or premeditation, nor was there motive to make it self-serving. Nothing in the record indicates that Getrost anticipated danger or injury until the moment he died.

We conclude that the trial judge committed no error in allowing the testimony to be introduced by applying the exception to the rule against hearsay. See Jones on Evidence (Fourth Edition) page 630, et seq.

Affirmed.

BROWN, C. J., TERRELL and CHAPMAN, JJ., concur.