STATE OF CONNECTICUT *v.* CHARLES A. TOLISANO

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND DICKENSON, JS.

Argued October 13—decided November 29, 1949.

*Leon RisCassi,* with whom, on the brief, was *Francis P. Rohrmayer,* for the appellant (defendant).

*John S. Murtha,* assistant state's attorney, with whom, on the brief, were *Albert S. Bill,* state's attorney, and *Joseph V. Fay, Jr.,* assistant state's attorney, for the appellee (state).

JENNINGS, J. The defendant, in a trial to the court, was convicted of maintaining a room with apparatus and devices for the purpose of making, recording or registering bets or wagers in violation of General Statutes, Rev. 1930, § 6280 (Rev. 1949, § 8672) and has appealed. The only substantial question on the

appeal relates to rulings on evidence. There was no serious dispute about the facts. The additions to the findings sought by the defendant would not affect the result.

In March, 1947, the defendant was living at 50 Standish Street in Hartford with his wife and two children. At that time he rented two rooms on the second floor of a dwelling house at 114 Potter Street in Hartford. The rooms consisted of a kitchen and bedroom partially furnished. It had been customary for the occupants of these rooms to use a second-floor hallway, bathroom and sink in common with the occupants of the two remaining rooms on that floor. The defendant rented the rooms under the name of Charles Clayton.

There was no telephone in this apartment when he rented it, but he had one installed and gave the name of Charles Clayton to the telephone company. He had the telephone listed under the name of Columbia Painting Company and in the yellow classified section by the same name under the heading "Painters." The telephone remained in service until it was discontinued after the raid hereinafter described. The name Columbia Painting Company was not registered in the office of the town clerk as a trade name, nor did any Charles Clayton register himself at such office as doing business under a fictitious or trade name.

During the period of his occupancy, the defendant would drive to the Potter Street address, arriving about 10:30 a.m. or thereafter and leaving between 6 and 7 p.m. On all such occasions he was well dressed and never was seen in working clothes. On August 20, 1948, the apartment was raided by the Hartford vice squad. They found the door leading from the hallway into the apartment locked, the back door open and the receiver off the telephone. On the tables in the apart-

ment they found two small white pads and a pencil, together with a keycase bearing the initials C. A. T. They also found a New York Telegraph, a New York Daily Mirror and a Hartford Courant. The Telegraph was open to a section which gave information regarding horse races and from it was missing a portion of a page in the racing section which contained an alphabetical listing of the horses entered in such races. Most horse races referred to in the Telegraph are run between 1:30 p.m. and 5:30 p.m. On a small bench next to the kitchen table there was a frequency modulation radio set in operation and tuned to station WEIL, which customarily broadcasts horse-racing results, but there was no evidence that at any time this radio had actually been used to receive broadcasts involving gambling or horse racing. Elsewhere in the apartment were found ten or eleven other white pads similar to those which had been found near the telephone. The bed did not appear to have been occupied.

The officers entered the apartment about 1:45 p.m. and left it about 3:45 p.m. During that period the telephone rang twenty-five or thirty times and the officers took the calls. The parties calling asked for Charlie, and in most of the calls the party calling placed a bet on a horse or horses running that day. The calls were not traced to any particular person. After the raid, a warrant was issued for the arrest of the defendant, but, in spite of efforts to that end, he was not apprehended until he came to police headquarters with his attorney five days later.

The trial court concluded that the defendant rented the apartment as a hideout where he could and did carry on activities relating to the making and recording of bets on horse races; that he did not and never intended to use the rented premises as a place of abode or for any other real purpose than to carry on illegal

gambling activities; that when the officers arrived he was in the apartment and was using it for the purpose indicated and escaped from it after concluding that his establishment was about to be raided.

The defendant objected to the admission of testimony concerning the telephone calls described above. The court remarked that, while one or two such calls might have resulted from getting a wrong number, twenty-five or thirty removed the matter from the coincidental. The following is an example of the bets taken by the police: "This is Al, Charlie; the Doc wants a $10.00 number hitch on eight races at Saratoga." The court admitted the testimony not to establish the truth of the facts related in the telephone calls but to establish the calls as verbal acts to show that the defendant was engaged in the activities described in the information. The state admitted that in the absence of such evidence it could not ask for a conviction. The ruling is therefore vital to the appeal.

In discussing the subject of verbal acts, Professor Wigmore gives the following illustration: "In short, the utterances enter *irrespective of the truth of any assertion they may contain;* . . . when an act of adverse possession is to be proved as the foundation of title, and the adverseness consists of a claim of ownership, the occupier's statement, 'This land is mine; for I have a deed from Doe,' is admissible as giving his occupation the significance of an adverse claim, but not as evidence that he has, as asserted, a deed from Doe." 6 Wigmore, Evidence (3d Ed.) p. 191; see *Horowitz* v. *F. E. Spencer Co.,* 132 Conn. 373, 378, 44 A. 2d 702. So, here, the telephone calls are admissible as evidence that bets were being placed but not that the statements made to the officers were true. The evidence is admitted, not as an exception to the hearsay rule, but

because it is not within the rule. 1 Wharton, Criminal Evidence (11th Ed.) § 448.

The principle finds support in *Loomis* v. *Smith,* 17 Conn. 115, 118, where a statement made in introducing certain persons was admissible to prove the fact but not the truth of the words used. See also *State* v. *Cronin,* 64 Conn. 293, 306, 29 A. 536; *Mower* v. *State Department of Health,* 108 Conn. 74, 79, 142 A. 473; *Gray* v. *Greenblatt,* 113 Conn. 535, 538, 155 A. 707. There is an abundance of decisions on the admissibility of telephone conversations, but most of them are concerned with the sufficiency of the identification of those conversing. See notes, L. R. A. (N. S.) 1918D, 720, 723; 71 A. L. R. 5; 105 A. L. R. 326. Such identification is essential when it is sought, for example, to base contract rights on the conversations. *Blakeslee* v. *United States,* 32 F. 2d 15, 18. Few cases have been found on all fours with the case at bar, but the case just cited, as well as *Commonwealth* v. *Jensky,* 318 Mass. 350, 61 N. E. 2d 532, *McLaughlin* v. *State,* 123 Neb. 861, 864, 244 N. W. 799, *Beard* v. *United States,* 82 F. 2d 837, 841, *Dolff* v. *United States,* 61 F. 2d 881, 884, and *Baum* v. *State,* 163 Md. 153, 160, 161 A. 244, are quite similar.

The telephone, with pads and pencil handy, could reasonably have been found to be an apparatus and device for the purpose of gaming, as charged in the information. Articles which ordinarily serve other purposes may be found to be devices and apparatus for gaming purposes if they are reasonably adapted to, and at the time in question are intended and actually used for, those purposes. *Commonwealth* v. *Jensky,* supra; see *State* v. *Ferrone,* 97 Conn. 258, 261, 116 A. 336.

The telephone calls, in connection with other circumstances in evidence, were ample to justify the conclusion of the trial court that the defendant was proven

guilty on all the evidence beyond a reasonable doubt. The claim of the defendant to the contrary is without merit.

There is no error.

In this opinion the other judges concurred.