Dena A. CARANTZAS, as administratrix of the Estate of Antonios K. Carantzas, deceased, DeSoto Liquor Stores, Inc., and Ann V. Thompson, Appellants,

v.

IOWA MUTUAL INSURANCE COMPANY, Appellee.

No. 15892.

United States Court of Appeals Fifth Circuit.

Aug. 3, 1956.

Rehearing Denied Sept. 5, 1956.

Tuttle, Circuit Judge, dissented.

Harry T. Gray, Geo. E. Turner, Francis P. Conroy, Sam R. Marks, Jacksonville, Fla., Marks, Gray, Yates & Conroy, Jacksonville, Fla., of counsel, for appellants.

Charles Cook Howell, Charles Cook Howell, Jr., Jacksonville, Fla., Howell & Kirby, Jacksonville, Fla., of counsel, for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

A. K. Carantzas, a resident of Jacksonville, Florida, owned a 1941 Chevrolet automobile. On November 26, 1951, he was issued a policy of automobile liability insurance with limits of $25,000 and $50,000, by Iowa Mutual Insurance Company, with respect to the 1941 Chevrolet. The policy was for a one-year term. It was issued through Mutual Insurance Agency, of Jacksonville Beach, Florida, operated by Mrs. Margie Musseau. Carantzas was of Greek origin and Mrs. Musseau was of Greek descent. She had known Carantzas and his wife for fourteen or fifteen years, since she was in her early teens. At one time she was in his employ. Before opening her own insurance agency, she had solicited insurance from Carantzas for a Jacksonville insurance firm by whom she was employed. Carantzas was the president, treasurer and sole stockholder of DeSoto Liquor Stores, Inc.

On January 11, 1952, Carantzas purchased for and in the name of his corporation a 1950 Chevrolet, trading in the 1941 Chevrolet, the title to which was in his name, as a part payment and paying the balance with a check of the corporation. On July 28, 1952, the 1950 Chevrolet, while being operated by Carantzas, collided with a truck on which Nance Norman Thompson was riding. In the collision both Carantzas and Thompson were fatally injured. The widow of Thompson brought suit against Dena A. Carantzas, the widow and administratrix of Carantzas and against DeSoto Liquor Stores, for the wrongful death of Thompson.

The administratrix and the corporation gave notice to the insurance company of the suit, claimed that the policy had been or should have been transferred from Carantzas to the corporation and from the 1941 Chevrolet to the 1950 Chevrolet, asserted that the corporation was insured against liability arising out of the operation of the 1950 Chevrolet, and demanded that the insurance company assume liability and defend the Thompson suit. The insurance company brought suit for a declaratory judgment determining that it has no insurance or insurance liability on the 1950 Chevrolet, naming as defendants the widow, Mrs. Carantzas, as administratrix of her late husband's estate, the corporation, DeSoto Liquor Stores, Inc., and Ann V. Thompson, the widow of Nance Norman Thompson. The corporation answered asserting liability of the insurance company, alleging that since the suit was filed it had paid Mrs. Thompson $31,500, and by counterclaim sought recovery of $25,000. In like manner the administratrix sought judgment for $2,000 for medical benefits. The insurance company filed a motion for a summary judgment. The district court found there was no genuine issue as to any material fact and gave judgment for the plaintiff insurance company. The counterclaim of DeSoto Liquor Stores was dismissed. On appeal from this judgment the cause comes before us.

Before the district court affidavits and depositions were filed in support of and in opposition to the motion for summary judgment. The salesman who handled for an automobile dealer the sale to De-Soto Liquor Stores of the 1950 Chevrolet stated that he made delivery of the car to it at its place of business and then informed Carantzas that since there was no financing of the deal there was no insurance on the car. Carantzas said he had insurance on the 1941 car and he would call his insurance agent and have it transferred to the 1950 car. The salesman called the office of the dealer and procured the motor and serial numbers of the 1950 Chevrolet. Carantzas then made a telephone call and the salesman heard his part of the telephone conversation. The salesman could tell, so he said, from the tone of Carantzas' voice, the manner of his speech and the expressions he used that the person with whom he was talking was an intimate acquaintance. The salesman recalled that Carantzas, after some personal conversation, told the person with whom he was talking that he had sold the 1941 Chevrolet and bought the 1950 Chevrolet, gave its motor and serial number and requested a transfer of the insurance.

■ One of the employees of DeSoto Liquor Stores testified that Carantzas had told him that he had transferred the insurance to the 1950 car. Mrs. Carantzas said that her husband had told her that he had given Mrs. Musseau notice to transfer the insurance. We think it was properly held that this testimony of the corporation's employee and Mrs. Carantzas did not come within any exception to the hearsay rule and it should be excluded.

Mrs. Musseau denied having any conversation with Carantzas regarding the transfer of insurance and stated that she had no knowledge during Carantzas' lifetime that the 1941 Chevrolet had been disposed of and the 1950 Chevrolet acquired. In the file of Mrs. Musseau is a memorandum in her handwriting containing a description of the 1950 Chevrolet, the date of the purchase, the name of the dealer from whom it was purchased, the name of Carantzas and the name of DeSoto Liquor Stores, Inc. On this memorandum was a notation "Reported by James Stelts July 29th, 1952". Mrs. Musseau said she obtained the information in a telephone conversation with Stelts, an insurance adjuster. The somewhat vague testimony of Stelts presents a doubt, at least, as to whether he had any detailed information about the 1950 Chevrolet at the time of his conversation on July 29th with Mrs. Musseau.

The district court found that the testimony of the employee of DeSoto Liquor Stores and Mrs. Carantzas was hearsay; that the testimony of the automobile salesman did not indicate to whom Carantzas was talking and hence did not prove notice to Mrs. Musseau or any other agent of the insurance company.

■ On many occasions this Court, as well as others, has declared the purposes, nature and effect of the summary judgment rule. Rule 56, Fed.Rules Civ. Proc. 28 U.S.C.A. It was succinctly stated by this Court that "the summary judgment rule is a salutary one for the purpose of avoiding unnecessary trials, that is, trials where there is nothing of fact to be tried." Sartor v. Arkansas Natural Gas Corporation, 5 Cir., 1943, 134 F.2d 433, 436. The Sartor case was reversed by the Supreme Court of the United States, it holding a summary judgment should not have been granted. By that Court it was said:

"The Court of Appeals below heretofore has correctly noted that Rule 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Sartor v. Arkansas Natural Gas Corporation, 321 U.S. 620, 64

S.Ct. 724, 728, 88 L.Ed. 967, rehearing denied 322 U.S. 767, 64 S.Ct. 941, 88 L.Ed. 1593.

Of similar effect is our holding that:

"Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. authorizes its use only where the pleadings, depositions, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Its purpose is not to cut litigants off from their right to trial by jury. On the contrary, it is to carefully test this, to separate the mere formal from the substantial, to determine what if any issues of fact are present for a jury to try, and to enable the court to expeditiously dispose of cases by giving judgment on the law where the material facts are not in dispute." Surkin v. Charteris, 5 Cir. 1952, 197 F.2d 77, 79.

In apt words, Chief Judge Hutcheson, speaking for this Court in a much cited opinion, said:

"Summary judgment procedure is not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for arriving at the truth. Its purpose is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer on a trial, it is to carefully test this out, in advance of trial by inquiring and determining whether such evidence exists." Whitaker v. Coleman, 5 Cir.1940, 115 F.2d 305, 307. See Volunteer State Life Ins. Co. v. Mabel Henson, 5 Cir., 234 F. 2d 535.

We are to keep in mind "that Rule 56 should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them.". Associated Press v. United States, 326 U.S. 1, 65 S.Ct. 1416, 1418, 89 L.Ed. 2013. More often than not difficulties stem from the application of the Rule to particular situations rather than from the construction or interpretation of it.

Mrs. Musseau said that if Carantzas had telephoned her advising he had bought a new Chevrolet in the name of DeSoto Liquor Stores and given her the motor number and serial number and asked her to transfer the insurance from the old car to the new car, she would have done so. The testimony of the automobile salesman is that Carantzas telephoned someone, said by him to be his insurance agent, giving the information and requesting the transfer.

We come then to the consideration of the testimony of the automobile salesman; is it admissible, and if so, does it with other admissible evidence have the probative effect of posing a genuine issue as to a material fact.

■■ The scope of the hearsay rule of evidence is tersely stated by Professor Wigmore in this sentence, "The Hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, as *assertions to evidence the truth of the matter asserted.*" 6 Wigmore on Evidence, 3rd Ed. 178, § 1766. The so-called res gestae exception to the hearsay rule is regarded by the courts, says Professor Jones "as extending to three classes of situations: (1) Where the act or statement evidences some mental or physical state or condition which might not otherwise be shown at all, said mental or physical state or condition, generally, being in issue; (2) Where the act or statement is the very fact in issue; (3) Where the act or statement is so closely connected with an accident or other incident involving stress or excitement that the attendant circumstances indicate an absence of opportunity to reflect or to fabricate". 3 Jones Commentaries on Evidence, 2nd Ed. 2190, § 1194. "And where, as in the second class, the act or statement is the very fact in issue, direct testimony is * * * first hand testimony to the issue and no person's credibility is involved but the witness". Id. p. 2191, § 1195. Statements may be

received "which themselves are facts constituting part of the transaction under investigation and which are admissible in evidence under the rule of res gestae. 20 Am.Jur. 557, Evidence, § 664. Cases where the foregoing doctrine has been applied to telephone conversations are included in the A L R note to State v. Tolisano, 136 Conn. 210, 70 A.2d 118, 13 A.L.R.2d 1405.

■ If the testimony of the automobile salesman had been offered for the purpose of showing that Carantzas owned a 1941 Chevrolet and had traded it in on a 1950 model for his corporation, or to show that there was a policy of liability insurance on the 1941 car, the testimony for such purposes would be inadmissible. But, being offered, as it was, to show that he had reported the trading of one car and the acquisition by his corporation of another, and that he requested insurance to be transferred from the one car to the other, the evidence would be admissible.

■ Mrs. Musseau is unequivocal in her declaration that Carantzas did not call her. But in her file is a memorandum of the identical information which the automobile salesman heard Carantzas report to someone. Her explanation of the source of this data may be open to question. Carantzas' statement to the salesman that he would call his "insurance agent" was admissible. Tampa Electric Co. v. Getrost, 151 Fla. 558, 10 So.2d 83. Carantzas' part of the telephone conversation indicated to the salesman that the conversation was with an intimate friend. Mrs. Musseau, it seems, was an intimate friend. Although Mrs. Musseau was not the only person who might be identified as an insurance agent of Carantzas she is the one who placed the liability insurance on the 1941 car, and it does not appear that there was any other insurance agent who was also an intimate friend. Here we have a credibility question in which the right of cross-examination may be important and the verdict of a jury essential. See 6 Moore's Federal Practice, 2d Ed. 2133, § 56.15(4). We conclude that the trial court was in error in determining that no genuine issue of fact was presented.

The policy of insurance on the 1941 car had a provision there appearing as Paragraph IV(a) (4) providing liability coverage not only on the 1941 Chevrolet as described in the policy but also upon:

"Newly Acquired Automobile— an automobile, ownership of which is acquired by the named insured who is the owner of the described automobile, if the named insured notifies the company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy or the company insures all automobiles owned by the named insured at such delivery date."

In the summary judgment of the district court it was found:

"Additionally, ownership of the 1950 Chevrolet was never acquired by the named insured under plaintiff's policy, Carantzas, but was acquired instead by the DeSoto Liquor Stores, Inc., which, even though wholly owned by Carantzas, was a separate legal entity. The policy, by the terms of Paragraph IV(a) (4), is applicable only to newly acquired automobiles; 'ownership of which is acquired by the named insured.' "

The insurance company urges that its liability *vel non* is dependent upon a compliance by the insured with this "Newly Acquired Automobile" clause, and in so urging it contends that the stipulated notice was not given and that the corporation was not the "named insured" of the policy. If Mrs. Musseau, the agent by whom the policy was written, could have caused the transfer of the policy from Carantzas to DeSoto Liquor Stores and changed the coverage from the 1941 to the 1950 car upon the request of Carantzas as she said she could do, and if, as is contended by DeSoto Liquor Stores, the request was

made, then we can see no reason for making inquiry as to whether there was such identity of Carantzas and the corporation as requires a disregard of the corporate entity.

The inferences to be drawn from circumstances, the credibility of witnesses and the weight to be given to their testimony, as elicited on both direct and cross-examination, are matters for the determination of a jury. So that there may be a trial with a jury, the judgment is

Reversed and remanded.

TUTTLE, Circuit Judge (dissenting).

With deference to the views of my colleagues, I must dissent from the holding that the circumstances sworn to by appellants' witnesses are sufficient to permit the inference that Carantzas had any conversation with Mrs. Musseau. Thus, I think they fail to establish a prima facie case which, it seems to me, is necessary if appellants are to withstand a motion for summary judgment in the face of the positive, unequivocal statement of Mrs. Musseau that no such conversation took place. The salesman's statement merely permits speculation, not inference from proven facts. It is not enough even on a motion for summary judgment. I think the judgment should be affirmed, not because the salesman's testimony as to the alleged conversation was hearsay, but because taking every word he said as true, it would not be sufficient to make a jury case. It does not meet the requirements of Rule 56 that the pleadings, depositions and admissions, together with the affidavits, show that there is a genuine issue of fact. This statement, if given as evidence on a jury trial, would, as I view it, be subject to being stricken because what Carantzas is reputed to have said is simply not connected up with an agent for appellee.

Rehearing denied: TUTTLE, Circuit Judge, dissenting.