**267 A.2d 414.**

STATE *vs.* JOSEPH A. WHITE.
STATE *vs.* PAUL C. JOHNSON.
STATE *vs.* RALPH J. CASALA.

JUNE 29, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J.  These are criminal complaints charging Joseph A. White and Paul C. Johnson with frequenting a certain gambling house and place where gambling was then and there carried on in violation of G. L. 1956, §11-19-21, and charging Ralph J. Casala with unlawfully letting and knowingly permitting to be occupied a house in East Providence to be used for the purpose of registering and receiving horse bets in violation of §11-19-22.  The complaints were tried together to a justice of the Superior Court sitting without a jury, and all three defendants were found guilty as charged in the complaints.  The defendants are now in this court prosecuting identical bills of exceptions.

During the month of March 1967 the Internal Revenue Service acting jointly with the East Providence police conducted an investigation into gambling activities in that city. In the course of that investigation Edward J. Pascucci, a special agent for the Internal Revenue Service, made several telephone calls on March 23, 24, and 28, 1967, to a telephone listed as 434-0446. Both the city directory and the telephone directory listed 69-71 Warren Avenue as being occupied by Townie Vets A. C., and the telephone directory listed the number as 434-0446. In each instance, in making the calls referred to, the agent dialed the number 434-0446 and asked for Angie, but received no acknowledgement other than that somebody said, "Hello." The agent on the occasion of each of these calls placed a bet on a horse.

On April 3 the premises were placed under surveillance by Anthony DeCastro of the East Providence police, who was accompanied by another member of that department. On the third of April all of the defendants were seen to enter and leave the premises between noon and five o'clock in the afternoon. The surveillance was continued on April 4, and the same defendants were again observed entering and leaving the premises.

The record discloses that thereafter, on April 5, 1967, several federal agents and members of the East Providence Police Department, operating under a warrant issued by the federal court, entered the premises at 69-71 Warren Avenue. Upon entering, they found some of the defendants in the premises. There was some testimony that at the time the agents entered the premises they observed a flash of bright light as if flash paper had been ignited. Several racing publications, all dated April 5, 1967, were seized and were subsequently introduced into evidence as State's Exhibit 1.

The agents remained in the premises for approximately

two hours thereafter, during which time several incoming phone calls were taken by an Internal Revenue agent named John J. Fahey. Fahey testified that he took three calls from callers seeking to place a bet on a horse race. He further testified that all of these calls were received at the telephone listed as 434-0446. Thereafter Agent Fahey went to the second floor of the premises where he found an apartment occupied by Barbara Sousa, and a search disclosed a considerable amount of cash, some sheets of flash paper, so called, and some checks. This paper and photocopies of these checks were admitted into evidence as State's Exhibits 2 and 3. After putting the above facts into evidence, the state rested, and the defense then rested without presenting any evidence in the case.

The defendants argue vigorously that it was error on the part of the trial justice to admit into evidence the testimony of the agent Pascucci that he had made three telephone calls to 434-0446 and the testimony of the agent Fahey that while the raid was in progress he received three calls on that telephone in which the callers were seeking to place a bet on a horse race. It appears from the transcript that, at the time such evidence was offered, it was objected to on the ground "* * * that any conversation that took place over the telephone is hearsay; furthermore, no guarantee of trustworthiness, no guarantee that the call was a genuine one." In overruling this objection, the court stated: "I don't believe it is hearsay — I think it is a fact as to what took place * * *."

We agree with the trial court that the admission of the testimony relating to these phone calls did not violate the hearsay rule because it was admitted, not to prove the truth of the assertion that the caller desired to place a bet, but rather to prove that the telephone located in the raided premises was used for the purpose of recording bets. While there seems to be some confusion as to the ground

upon which such testimony is to be admitted, we think the sound rule is stated in 6 Wigmore, *Evidence* (3d ed.), §1766, at 178, where the noted text writer says: "The prohibition of the Hearsay rule, then, *does not apply to all words or utterances merely as such.* If this fundamental principle is clearly realized, its application is a comparatively simple matter. The Hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, as *assertions to evidence the truth of the matter asserted.*"

In *State* v. *Tolisano,* 136 Conn. 210, 70 A.2d 118, the defendant had been charged with the maintenance of a room containing apparatus and devices for the purpose of making and recording bets or wagers. The trial court admitted into evidence testimony that the officers in the room during the raid had received some 25 or 30 phone calls over a phone located in the defendant's apartment while the raid was in progress. The trial court admitted the testimony "* * * not to establish the truth of the facts related in the telephone calls but to establish the calls as verbal acts to show that the defendant was engaged in the activities described in the information." *Id.* at 214, 70 A.2d at 119.

The correctness of this ruling was before the Connecticut court for decision. It held that the telephone calls were properly admitted as evidence that bets were being placed, but not that statements made to the officer over the phone were true. In other words, the Connecticut court admitted the evidence, not as an exception to the hearsay rule, but because it deemed such testimony not to be within the scope of the hearsay rule. The court said in that case: "So, here, the telephone calls are admissible as evidence that bets were being placed but not that the statements made to the officers were true. The evidence is admitted, not as an exception to the hearsay rule, but

because it is not within the rule." *Id.* at 214-15, 70 A.2d at 120.

The text writer goes on in §1766, at 180, to "* * * distinguish and mark off the various classes of utterances which legally pass the gauntlet of the Hearsay rule because it does not apply to them. The classes of utterances thus exempt may be grouped under three heads: 1. Utterances material to the case as a *part of the issue* * * *." In our opinion, testimony of the character under consideration is evidence going to the basic issue in these cases, that is, the use of the phone for placing wagers and bets. The police officer is in court testifying as to the use having been made of the phone and is available for cross-examination as to the truth of the testimony he has given.

In our opinion, the Massachusetts court accepted this view in *Commonwealth* v. *Jensky,* 318 Mass. 350, 61 N.E.2d 532. There the defendant was charged with maintaining a place in which apparatus intended for use in the registering and recording of horse bets was kept. One of the police officers in the raiding party testified that a number of phone calls had been received from a phone in the defendant's apartment, and the court held that such testimony was admissible. While the hearsay rule was not expressly raised, the opinion clearly implies its rejection in this context. There the Massachusetts court considered only the relevancy of the proffered testimony to the issue in the case, that is, the keeping of apparatus for the purpose of recording bets in a room or other place. The court said, in part: "The principal question is the admissibility of the evidence of the telephone conversations. We think that it was properly received in the circumstances. * * * Its relevancy was to show that the room where the defendant was 'found' contained 'apparatus,' in this case a telephone, which was used, or intended to be used, for registering bets upon horse races. It was highly cogent first hand in-

formation as to the actual use of the telephone equipment." *Id.* at 352, 61 N.E.2d at 534.

Contrary to defendants' further contention in the instant case, testimony as to the telephone calls was offered, not to prove that defendants made or accepted horse bets, but to prove that they were frequenting a place where gambling was then and there being carried on. It seems obvious that evidence that the telephone located in the place was being used to make wagers on horse races is clearly relevant on the issue of whether the place was being used for gambling purposes. In these circumstances there is no merit in defendants' contention that the proffered evidence was erroneously admitted in that, being barren of probative force, it was without legal competence on the issue. It is our opinion that it was relevant on a material issue and was properly admitted. The argument of defendants, in our opinion, is directed to the weight to be given such evidence rather than to its admissibility.

The defendants contend further that it was error to admit into evidence a package of flash paper, so called, along with photocopies of four checks found in the premises at the time of the raid. The defendants argue basically that, first, there is nothing in evidence that connects them with the flash paper or shows any knowledge on their part of its existence and, second, that no reasonable inference establishing the guilt of defendants can be drawn from the checks, some of which were apparently executed by them. We see no error in the admission of this evidence. There is a substantial line of authority which supports the admission of this type of evidence because it is relevant in these cases to the main issue, that is, the use that was being made of the premises. In *Courtney* v. *State*, 187 Md. 1, 5, 48 A.2d 430, 432, the court said: "It is doubtless true, as contended, that the mere possession of these papers would not be sufficient to establish the

guilt of either party charged. But they were admissible as one of a series of circumstances tending to establish that bookmaking was being conducted on the premises." See also *State* v. *Tolisano, supra; Commonwealth* v. *Jensky, supra.*

The record discloses that, at the conclusion of the state's case and after defendants had rested without presenting any evidence on their behalf, they moved that a judgment of acquittal be entered for each defendant. A close scrutiny of the transcript fails to reveal that the trial justice, at the conclusion of argument on this motion, acted either to grant or deny it. The record is persuasive that the trial justice treated argument on the motion by counsel as constituting closing arguments in the cause and, after hearing them, proceeded to decide the case on the evidence.

The phrase "motion for judgment of acquittal" is used in Rule 29 of Fed. R. Crim. P. and is a motion made before submission of the case to a jury.[1] Under the federal practice as now established, motions for directed verdicts have been abolished, and the motion for judgment of acquittal is used in place thereof. It is to be realized, however, that the long-standing practice in the criminal courts of this state is to permit defendants at the close of all the evidence to move for a directed verdict. However, the practice contemplates that such a motion has application only in cases tried to a jury. The record clearly discloses that here a jury trial had been expressly waived by each

---

[1] Rule 29 (a) reads as follows: "Motion Before Submission to Jury. Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right."

defendant, and the motion, therefore, was out of order. This contention of defendants is without merit.

The defendants urge finally that it was error on the part of the trial justice to find them guilty beyond a reasonable doubt of the offenses charged in the complaints. In so arguing, they contend that the evidence, most of it circumstantial, was insufficient to support decisions of guilty beyond a reasonable doubt. The record discloses that the defendant in each case moved for a new trial, and this motion was subsequently denied pro forma. The record discloses further that the motion in each case contended that the decision of the trial justice was contrary to the evidence and the weight thereof, but in none of them was a new trial claimed on the ground of newly discovered evidence. It may well be, despite the silence of the record, that the pro forma denial of the motion rested on the fact that the statute G. L. 1956 (1969 Reenactment) §9-23-2[2] provides that in cases tried without a jury in the Superior Court a new trial may be had only on the ground of newly discovered evidence. *State* v. *DiMuccio,* 106 R. I. 219, 258 A.2d 67.

The statute, then, makes it impossible for a defendant who has waived a jury trial in the Superior Court to challenge the weight and sufficiency of the evidence by a motion for new trial. This could, in our opinion, result in manifest injustice on occasion. When an exception has been taken to the decision of a trial justice, it is well within our inherent powers to pass upon the question whether the trial justice was clearly wrong in that he overlooked

---

[2]Section 9-23-2 reads as follows: "Motion after superior court trial without jury.—Except as otherwise provided by applicable procedural rules, within seven (7) days after notice of decision on the merits in any action or appeal heard by the superior court without a jury, any person or party entitled to except or appeal may file in the office of the clerk of said court a motion for a new trial for newly discovered evidence. After hearing the parties the court may grant a new trial with or without terms."

or misconceived material evidence on a controlling issue, as we may do in any case where the decision of a trial justice has been brought before us by way of exception. We did precisely this in *State* v. *Franklin*, 103 R. I. 715, 724, 241 A.2d 219, 225.

To so hold in no way conflicts with our well-established rule that where a litigant after a jury trial chooses to proceed immediately to this court without making a motion for a new trial in the Superior Court to test the sufficiency of the verdict, he is foreclosed from our consideration of either the credibility of the witnesses or the weight of the evidence. *Gramolini* v. *Marzalkowski*, 102 R. I. 85, 228 A.2d 537. In the instant circumstances, however, we will not pass upon weight and credibility, but determine only whether there was basic error on the part of the trial justice in that he either misconceived or overlooked material evidence in reaching his decision.

In determining whether the trial justice erred, it must be remembered that the question here is not whether these defendants engaged in the taking or registering of bets but whether they frequented a place wherein gambling was carried on. The uncontradicted evidence discloses that defendants were observed by police officers entering and leaving the suspected premises on two or three occasions just prior to the day of the raid. One agent testified that he had made at least three phone calls to a phone later found in the suspected premises and that horse bets apparently were accepted. Another agent testified that, while the raid was in progress, he had taken three phone calls from persons seeking to place bets. It further appears that when the officers entered the premises, they saw a flash of white light and later found a container of what was introduced into evidence as "flash paper," a paper which, when ignited, will burn almost instantaneously. They also seized several copies of periodicals devoted to

the publication of horse-race information and results and several checks, the signatures on which were apparently the names of these defendants.

As we have noted, none of this evidence was contradicted or impeached, and, in our opinion, none of it was self-impeaching. From our examination of the transcript we cannot say that it was inherently improbable or that it was inconsistent with the facts established. In his decision the trial justice directed attention to all of this evidence and discussed it, and in that discussion we perceive nothing to indicate that he either overlooked any evidence or misconceived its circumstantial character. It may be that it would not exclude a reasonable inference that certain of the defendants had not recorded horse bets, but it is sufficient to be exclusive of any reasonable inference that the premises were not being used for gambling at the time and that the defendants had frequented the premises at such times. In the circumstances we cannot say that he was clearly wrong.

All of each defendant's exceptions are overruled, and the cases are remitted to the Superior Court for further proceedings.

Motion to reargue denied.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Assistant Attorney General, *Scott K. Keefer,* Special Assistant Attorney General, for plaintiff.

*William G. Grande, Judith E. Hodge,* for defendants.