STATE OF CONNECTICUT *v.* STANLEY W. SMYRSKI

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 4-12523

Argued February 6—decided May 26, 1967

*R. Patrick McGinley,* of Bristol, for the appellant (defendant).

*Francis M. McDonald,* deputy chief prosecuting attorney, for the appellee (state).

Kosicki, J. The information charged the defendant with violation of General Statutes § 53-295, entitled "Pool Selling," and with possession of lottery tickets in violation of § 53-298. No bill of particulars was requested and no objection raised to proceeding with the trial without further specification of the portion of the statute relied on by the state as to each count. The information was in the short form and complied with the requirements of Practice Book § 493. *State* v. *Davis,* 141 Conn. 319, 320; *State* v. *Whiteside,* 148 Conn. 208, 210. After a trial to a jury, the defendant was found guilty on each count and has appealed from the judgment. Neither in his assignment of errors nor in his brief or argument has he pursued his appeal from the judgment on the second count, and it is therefore considered abandoned.

Under the provisions of § 53-295, it is unlawful to occupy a building, room or place with apparatus or any device for the purpose of making, recording or registering bets or wagers upon the result of horse races. The statute does not require evidence of the actual making of bets. *State* v. *Rich,* 129 Conn. 537, 540.

No finding was requested or made. There were no exceptions to the court's instructions to the jury, and we may assume that they were correct. The defendant limits himself to only two assignments of error, challenging the rulings of the court (1) in admitting a slip of paper found on the premises and containing a record of bets; and (2) in allowing testimony of a telephone conversation between the witness, a police officer, and the wife of the defendant.

The essential facts are undisputed. Both the prosecution and the defense, in their arguments and briefs, have made liberal reference to the tran-

script of evidence and to the exhibits in the case. To determine the narrow claims of error presented on appeal and their materiality, we must, of necessity, follow the procedure adopted by the parties.

On February 25, 1966, the state police, under authority of a search warrant, entered a shack in Wolcott. It was then occupied by the defendant. He was found there alone by Sergeant Reardon, who was the first to enter the premises. The entry was forcible because the only door by which access was provided had been secured on the inside by two bolts and, despite the warning and demand of entry shouted by Sergeant Reardon, the defendant failed to unbolt the door. As the police entered, the defendant was standing at an oil-burning stove in the kitchen with a lid lifter in his hand and there were papers burning in the stove which Sergeant Reardon could not retrieve. As the police approached the premises, they observed that there were no footprints in the snow to the rear of the buliding and no one was observed leaving through the door.

The shack consisted of two main rooms, the kitchen and a bedroom. In the bedroom the police found a table with the following objects thereon: a telephone, an ashtray with a burning cigarette, red and blue ball-point pens, a portable radio, and a clock. There was also a Daily Armstrong, commonly known as a scratch sheet, which contains almost exclusively horse race information. In their search, the police found hidden in the kitchen ceiling fifteen envelopes containing "flash paper." Detective McDonnell, who testified as an expert on gambling methods, usages and paraphernalia, stated that flash paper is ordinarily used by gamblers to record bets because, if necessary to destroy the evidence, it burns quickly and leaves no ash. In the opinion of the witness, all the other objects men-

tioned above were gambling paraphernalia and each item would have use in receiving wagers (telephone), recording wagers (pens and paper), checking wagers (Daily Armstrong, the clock, and the radio), and in destroying evidence of wagers (ashtray, cigarette and flashpaper).

While on the premises, Detective McDonnell answered the telephone on the table, call number 879-0172, and talked to the caller, who asked: "Is this Stanley?" The officer responded, "Yes." The caller identified himself as "T" and placed a series of horse bets. Later he was ascertained to be Russell Tracy, who freely admitted having placed bets daily over this particular telephone beginning in the fall of 1965, although its number had been changed twice during the interval. Tracy had pleaded guilty to his participation as a bettor and was called by the defense as a witness at the defendant's trial.

During the police search of the premises, Trooper Conroy found a folded piece of flash paper behind a clothes hanger cleat in the bedroom closet. This slip, state's exhibit 10, contained a number of horse bets under date of February 4, 1966, and was written in blue and red ink. The legend "T" appears on this paper twice as a bettor and again on the balance sheet as one who owed $115 and had paid the sum owed. This exhibit is the subject of the defendant's first claim of error.

Both the defendant and his brother testified. The defendant admitted having spent the week alone in the shack but denied knowledge of the slip, exhibit 10. He and his brother both testified that during the month preceding no one outside of themselves occupied the premises. The brother admitted that he was lessee of the premises but disclaimed knowledge of, or refused to answer any questions that

might tend to incriminate him in, any gaming activities which the jury could reasonably find were being carried on in the rented shack. There was proof to the requisite degree that the code name used by the one receiving the telephone bets was "Stanley," which is the defendant's first name. The jury could reasonably conclude that the betting tally sheet found in the closet, exhibit 10, was in the custody of the defendant. "To have custody of a thing means to have temporary physical possession of it. It does not necessarily involve a domination over the thing. *Hancock* v. *Finch,* 126 Conn. 121, 123 . . . . Plainly, . . . the defendant was the custodian of the slips." *State* v. *Johnson,* 140 Conn. 560, 565; see *State* v. *Ragozzino,* 23 Conn. Sup. 181, 183, 1 Conn. Cir. Ct. 166, 168; *State* v. *Davis,* 23 Conn. Sup. 22, 35, 1 Conn. Cir. Ct. 361, 375. Furthermore, the defendant was not charged with the mere possession of a record of bets; upon a review of the evidence, it is clear that the part of the statute toward which the prosecution was directed proscribed the keeping or occupying, or assisting in so doing, of a building or place with apparatus or any device for the purpose of recording bets or wagers. The questioned exhibit was but one item of a volume of evidence, including the bets placed over the telephone while the officers were making their search, from which the jury were entitled to find that the character of the place violated the statute. *State* v. *Tolisano,* 136 Conn. 210, 214. The first assignment of errors is without merit.

The second claim of error is predicated on the admission in evidence of a telephone conversation between Sergeant Reardon and the defendant's wife. During the cross-examination of Sergeant Reardon, defense counsel referred to the warrant in which the search of the shack mentioned above had been authorized. This warrant was admitted

without objection as a full state's exhibit. The witness was asked to read from this exhibit, and he read portions of it before the jury, without objection by the defendant. After the answer was completed, the defendant then objected and took an exception from the court's adverse ruling. He made no motion to strike that portion of the evidence to which objection had been made. These two omissions in themselves would not preclude the defendant from asserting error provided, of course, that the evidence objected to was inadmissible. *Hackenson* v. *Waterbury*, 124 Conn. 679, 683–84. That is not the situation in the case before us. The witness was reading from an exhibit admitted without any limitation. From this and from the transcript, it appears that Sergeant Reardon had called the number of the telephone at the shack, 879-0172, and a male voice had answered. He then called a number listed in the telephone directory in the defendant's name. A woman's voice answered and, in response to the sergeant's question, said that the defendant was not at home but could be reached at 879-0172, the telephone at the shack. The defendant testified that he had given that number to his wife. The sergeant could reasonably conclude that the female voice, speaking to him over the telephone in the defendant's home, was the voice of the defendant's wife. It may also be noted that both the defendant and his brother denied any knowledge of one Sansetti, in whose name the telephone at the shack was listed. All of this testimony was relevant to the charge in the first count, and the jury were entitled to consider the conduct of the defendant within a reasonable time before the search and arrest were initiated. The circumstances related above tended to establish a consciousness of guilt on the part of the defendant. *State* v. *Heno*, 119 Conn. 29, 32.

Neither was it necessary, as the defendant claims, that before evidence of the conversation could be introduced, a foundation be laid by first proving that the voice at the Smyrski end of the telephone line was that of the defendant's wife. The conversation was admitted not to prove the identity of the woman who spoke over the telephone to Sergeant Reardon but as a verbal act to show that the defendant was engaged in those activities charged in the first count of the information. *State* v. *Tolisano,* 136 Conn. 210, 214. The evidence was properly admitted.

There is no error.

In this opinion JACOBS and LEVINE, Js., concurred.