STATE OF CONNECTICUT *v.* JOSEPH INZITARI

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 1-27312

Argued April 7—decided August 15, 1969

*George A. Saden* and *Sturges N. Laros,* both of Bridgeport, for the appellant (defendant).[1]

*Joseph D. Harbaugh,* special assistant prosecuting attorney, for the appellee (state).

DiCenzo, J.   On December 6, 1966, Lieutenant Hogan of the Stamford police department, armed with a search warrant issued by a judge of the Circuit Court, entered premises known as the Colony Cleaners, located at 174 Myrtle Avenue, Stamford. This is a cleaning establishment run by the defendant.  As Hogan, accompanied by Detectives Aguire and McLellan, entered through the front door, he could see into the back room of the store and observed the defendant seated at a sewing machine. As Hogan entered, the defendant ran from the sewing machine into the bathroom.  Hogan went into the back room and, as he entered the bathroom, observed the defendant standing over the toilet and the water being flushed down.   The defendant stayed completely stationary and made no move toward Hogan, who put his hand into the toilet and picked out some paper of the type known as water soluble.  He did not observe the defendant place any paper in the toilet.  On the piece of paper were nine policy bets, which were transcribed by Detective Aguire.  There was also a pool bet which Hogan took out of the

---

[1] Neither counsel appeared for the defendant in the trial of the case.

toilet bowl. While on the premises, Detective Aguire answered the telephone and took some bets over it.

The defendant was found guilty on three counts of possession of policy play on December 6, 1966; one count of destruction of evidence; and one count of pool selling. The seven issues presented in this appeal are considered in the order set forth by the defendant in his brief, since they cover the eighteen assignments of error claimed.

### ISSUES 1 AND 2

The defendant claims that General Statutes § 53-295 (pool selling) and § 53-298 (policy playing) are so vague and of such overbreadth as to violate the fifth and fourteenth amendments to the constitution of the United States. One thrust of the defendant's attack on these statutes is the meaning of the phrase "concerned in," as used in General Statutes § 53-295, and the claimed overbreadth of both §§ 53-295 and 53-298. Our Supreme Court has judicially defined the meaning of the phrase "concerned in" as used in these statutes. "One is concerned in a certain matter when he has some connection with it, when it affects his interests or involves him." *State* v. *Genova,* 141 Conn. 565, 568; *State* v. *Fico,* 147 Conn. 426, 431. This judicial definition is in tune with the latest definition of "concern" and "concerned" in the Random House Dictionary of the English Language (1966), i.e., "To relate to; be connected with; be of interest or importance to; affect, interested or participating; having a connection or involvement." There is nothing vague or ambiguous about this language so as to violate the constitution of the United States. In *United States* v. *National Dairy Products Corporation,* 372 U.S. 29, 32, the United States Supreme Court stated: "[S]tatutes are not automatically invalidated as vague simply because difficulty is

found in determining whether certain marginal offenses fall within their language. . . . Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." As to the constitutional claim of overbreadth, the defendant fails to demonstrate how any one of his substantive due process rights has been curtailed. As the state sets forth in its brief, "[t]he mere assertion of infringement of a freedom by overbreadth cannot be an adequate substitute for evidence of such invasion. Overbreadth is invoked when a defendant claims infringement upon a substantive due process right. Thus overbreadth has been involved in cases asserting encroachment of freedom of speech . . . [*Garrison* v. *Louisiana,* 379 U.S. 64]; freedom of the press . . . [*Roth* v. *United States,* 354 U.S. 476]; freedom of assembly and association . . . [*United States* v. *Robel,* 389 U.S. 258]; freedom of religion . . . [*Braunfeld* v. *Brown,* 366 U.S. 599]; the right of privacy . . . [*Griswold* v. *Connecticut,* 381 U.S. 479]; and the right to travel . . . [*Aptheker* v. *Secretary of State,* 378 U.S. 500]." In the instant case there is no evidence of the invasion of a freedom or of a substantive right. Both claims of vagueness and overbreadth are without merit.

Issue 3

The defendant claims that convictions on counts one, two and three subject him to double and triple jeopardy in derogation of his rights under the fifth and fourteenth amendments to the constitution of the United States. The fifth amendment to the constitution provides, inter alia: ". . . nor shall any person be subject for the same offence to be twice put in jeopardy . . . ." Connecticut has adopted the common-law rule against double jeopardy as necessary to the due process guaranteed by what

is now article first, § 8, of our 1965 constitution. *Kohlfuss* v. *Warden,* 149 Conn. 692, 695.

In each of counts one, two, and three, the defendant was charged with policy playing on December 6, 1966. There was a single arrest made on one day. Section 53-298 specifically provides that "each day of any such above-mentioned activity shall constitute a separate offense." To determine whether or not double or triple jeopardy is involved, it is necessary to determine whether or not policy playing is a continuing offense. "In *United States* v. *Midstate Co.,* 306 U.S. 161, 166, . . . a definition given in the opinion of the Circuit Court of Appeals in the same case is approved: 'A continuing offense is a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy.'" *State* v. *Licari,* 132 Conn. 220, 223. It is the activity of policy playing that constitutes the offense, and such activity is of a continuing nature. The legislature must have recognized the continuing nature of policy playing and therefore inserted the provision above quoted that each day of such activity shall constitute a separate offense. There are several interesting references to continuous offenses in the *Licari* case, supra: In *In re Snow,* 120 U.S. 274, for example, three indictments were found against the defendant under a federal statute penalizing a male who cohabited with more than one woman. He was tried on one indictment and found guilty. When he was put to trial on the other two he pleaded his conviction as a defense. The Supreme Court of the United States held that the defense was good. Reference is also made in *State* v. *Licari,* supra, 224, to an early English case where the defendant was charged under an act of Parliament penalizing one who did the work of his ordinary calling on the Lord's day and was convicted four times for sales made to

different persons on the same day. The court said it was but one entire offense and there could be but one entire offense on one and the same day. The *Licari* opinion, supra, 226, also points out analogous continuous offenses: keeping a place for illegal sale of liquor, keeping a house of ill fame, and keeping a faro table. In *Licari,* supra, the defendant drove his automobile at a high speed in New Haven and continued on in Woodbridge. The defendant was prosecuted in New Haven, in the former City Court, found guilty and sentenced. He was later arrested on a bench warrant issued by the Court of Common Pleas on an information containing the same offenses for which he was tried in New Haven. On a reservation, the Supreme Court described the offense as similar to other offenses of a continuing nature and held that a plea in bar was good as to the similar count in the information in the Court of Common Pleas. "The prohibition against double jeopardy has been stated to mean, fundamentally, that no person shall be twice tried and punished for the same offense." *Kohlfuss* v. *Warden,* supra, 696. In the instant case, the defendant was tried on three counts for one continuous offense on the same day, found guilty and sentenced on each of the three counts to jail terms to run consecutively. There is error as to the second and third counts.

## ISSUES 4 AND 5

The defendant claims that the court erred in charging the jury in several respects and particularly with reference to §§ 53-295 and 53-298 of the General Statutes. The attack is that the statutes were read in their entirety. The defendant, however, failed to file requests to charge or take exception to the charge as given. Under §§ 249 and 800 of the Practice Book, we are not bound to consider claims of error as to the giving or failing to give

certain instructions to the jury unless requests are filed in writing or exceptions are taken immediately after the charge. The situation in this case is exactly like the situation in *Ehrhard* v. *Taylor,* 136 Conn. 13, 14. There, trial counsel made one objection only to the charge and that was directed to a matter not involved in the appeal. "There were no requests to charge. Other counsel have come into the case upon the appeal, and they now contend that, although the plaintiff failed to comply with . . . [§ 249] of the Practice Book, the charge in the present case presents an exceptional situation which merits consideration. We have refused to make exceptions in the application of the rule from the date of its adoption, except in cases where the circumstances were of an unusual and compelling character, as in *Mickel* v. *New England Coal & Coke Co.,* 132 Conn. 671, 674 . . . . We have examined the present situation and have decided that it is not such as to warrant relaxation of the rule." Likewise, in the instant case we fail to find any exceptional circumstances which justify our relaxation of the rule.

The defendant was charged in count five of the information with "destruction of evidence," was found guilty of this offense and was fined $1000 and ordered to serve a jail term of 360 days on this count. The record discloses that there was evidence tending to show that there had been an attempt to destroy evidence. The court, however, charged the jury on § 54-33d, "Interference with search," and failed to give any instruction on § 54-33e, "Destruction of property." This was error. "It is error to submit to the jury wholly inapplicable statutes." *Angelino* v. *Hersey,* 147 Conn. 638, 640. Even though no exception was noted at the trial, we have considered this issue because the applicable statute was completely omitted. See *Adley Express Co.* v. *Darien,* 125 Conn. 501, 504.

## Issue 6

The defendant claims that the court erred in denying the defendant's motion to suppress evidence and in admitting into evidence telephone calls taken by the police; and in that the affidavit pursuant to which the search and seizure warrant was issued did not meet the test set forth in *Spinelli* v. *United States*, 393 U.S. 410.

Upon examining the affidavit, we found that it contained the following statements. Two police officers had received information concerning a "bookie operation" at the defendant's place of business. On November 29, 1966, from 10:30 a.m. until 1:30 p.m., they conducted a surveillance of the premises, purported to be a garment cleaning establishment. During these hours the officers observed a number of people enter and leave the premises without carrying articles of clothing either going in or coming out. One male entered with a small brown paper bag. One male entered with white slips of paper in his hand and displayed the papers to the defendant. On November 30, 1966, the officers conducted a further surveillance of the premises during similar gambling activity hours and observed several people enter and leave the premises without garments of any kind, either on entering or on leaving. The affidavit also set forth that the defendant has been arrested and convicted of pool selling and policy playing in the past. The defendant asserts that this affidavit failed to meet the test suggested in *Spinelli,* supra. We do not agree and are of the opinion that probable cause was spelled out in this case. There is a vast difference between the affidavit in this case and the affidavit struck down in the *Spinelli* case, supra. In *Spinelli* the only facts supplied to the magistrate were that Spinelli was using two telephones listed under an assumed name, each telephone carrying

a different number. Although it recited surveillance by the federal bureau of investigation over a period of five days, there was nothing disclosed as the result of the surveillance which indicated that Spinelli was taking bets. Although the application stated that Spinelli was known to the law enforcement agencies as a bookmaker, this knowledge was based on a "tip" from an informer, and the affidavit did not allege that the informer had personally observed Spinelli or placed bets with him. In the instant case, the affidavit recited: The defendant was in fact a convicted bookmaker. Several people would enter and leave his premises during bookmaking and betting hours of the day. Most of those entering and leaving did so without carrying garments of any kind, either going in or coming out. Some had slips of paper in their hands when entering and were actually seen in conversation with the defendant about the slips.

This use of the defendant's premises was actually observed and reported by the affiants. We find little similarity between this affidavit and the Spinelli application. This assignment is of no help to the defendant.

The defendant contends that the seizure of the telephone calls—i.e. admitting them into evidence— was a violation of his rights under the fourth and fourteenth amendments to the constitution of the United States in that the evidence was the product of an unreasonable seizure. Since telephones have been held to be gambling apparatus or paraphernalia; *State* v. *Tolisano,* 136 Conn. 210; it would be a poor search indeed if an officer were to ignore a telephone call while making a legal search. The context of the telephone calls was simply evidence that the defendant was engaged in pool selling and policy playing. See *State* v. *Smyrski,* 4 Conn. Cir. Ct. 550.

### Issue 7

Did the court err in failing to set aside the verdict as to count four? In this count the defendant was charged with pool selling. The defendant argues that the pool selling statute violates the due process clauses of the fourteenth amendment to the constitution of the United States and article first, § 8, of the constitution of Connecticut in that it is vague and ambiguous. The discussion on issues one and two disposes of this claim.

There is no error as to the first count and the fourth count; there is error as to the second count, the third count and the fifth count; the case is remanded with direction to modify the judgment as to the second count, the third count and the fifth count to adjudge the defendant not guilty on the second count, the third count and the fifth count.

In this opinion Jacobs and Kinmonth, Js., concurred.